(No. 13881.—Judgment reversed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LUCIUS J. LOVE, Plaintiff in Error.

*Opinion filed June 22, 1921.*

1. CRIMINAL LAW—*validity of statute is question for the court.* The question whether or not a statute is constitutional is for the court and is never a question for the jury.

2. CONSTITUTIONAL LAW—*practice of a lawful business or profession is a property right.* The right to practice a lawful business or profession is a property right within the meaning of the constitutional provision as to due process of law, and the power of the legislature to impose restrictions on a lawful calling or profession must be exercised in conformity with the constitutional requirement that such restriction must operate equally upon all persons pursuing the same business or profession under the same circumstances.

3. MEDICINE AND SURGERY—*legislature may prescribe qualifications for the practice of medicine or other healing profession.* The right to follow any of the lawful occupations is a fundamental right of citizenship, but the legislature, by a proper exercise of the police power, may make reasonable requirements with reference to the examination and qualifications for the practice of medicine and surgery, osteopathy or chiropractics.

4. SAME—*section 5 of the Medical Practice act, fixing minimum standards of education, is unconstitutional.* Section 5 of the Medical Practice act, (Laws of 1917, p. 580,) fixing the minimum standards of professional education for practicing medicine and surgery and for treating human ailments without the use of medicine or

surgery, is unconstitutional, in that it unjustly discriminates against the latter profession by requiring such practitioners to be graduates of a four-year professional school, while for those desiring to practice medicine or surgery it is sufficient if the medical college from which they graduate is in good standing and repute at the time of graduation, whether or not it requires a four-year course of instruction.

5. SAME—*the rule requiring chiropractors to get recommendations from medical men or osteopaths is unreasonable.* The rule of the Department of Registration and Education which, in effect, requires an applicant for examination for license to practice chiropractics to secure recommendations of moral and professional character from two medical men or osteopathic physicians is arbitrary and unreasonable, as it is possible for chiropractors to establish their good moral character and professional standing by competent men in their own profession or other callings outside the medical profession.

6. SAME—*rules of Department of Registration and Education are subject to review by courts.* The rules and regulations of the Department of Registration and Education as to the qualifications of applicants for examinations for physicians' licenses are subject to review by the courts to determine whether they are reasonable.

WRIT OF ERROR to the County Court of Vermilion county; the Hon. THOMAS A. GRAHAM, Judge, presiding.

ACTON & ACTON, and LOVE & KILGORE, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, JOHN H. LEWMAN, State's Attorney, and FLOYD E. BRITTON, (RAY CARTER, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, Lucius J. Love, graduated April 1, 1920, from the Palmer School of Chiropractic, located at Davenport, Iowa, and incorporated May 24, 1907. That institution has a full two-year course prescribed, which covers anatomy, physiology, hygiene, symptomatology, histology, chiropractic analysis, chiropractic nerve-tracing and palpation, and other studies. He took the full two-year course in that institution prior to his graduation. There

is no chiropractic school or college in this country that has a four-year course of study, and so far as this record shows no other school or college that has more than a two-year course. Plaintiff in error's previous training for his profession consisted of a common school education and also of more than three years' high school work. He and his wife, who is also a graduate of the same chiropractic school, opened an office May 3, 1920, in Danville, Illinois, and practiced as chiropractors for the treatment of human ailments without the use of drugs and surgery. Previous to beginning his practice he made application to the Department of Registration and Education to ascertain what was necessary for him to do to be examined and licensed to practice his profession. He received from the superintendent of registration instructions which the law and that department prescribe as prerequisite to being admitted to such an examination. Among such instructions received by him was a rule or regulation of that department in this language: "This application [referring to his application for examination and license] must be accompanied by letters of recommendation with regard to the moral and professional character of the applicant from at least two reputable medical men or osteopathic physicians who live in Illinois, or if from non-residents of the State, such letters must be indorsed by reputable medical men or osteopathic physicians of Illinois." Being advised that the requirements of the Illinois law to obtain his license were void because unreasonable, discriminatory and unconstitutional, he began practice as a chiropractor and treated a number of patients for various ills according to the methods of chiropractors. He was convicted and sentenced to pay a fine of $50 and costs of prosecution in the county court of Vermilion county on October 22, 1920, on an indictment charging him with treating human ailments without the use of drugs or medicine and without operative surgery and without a license, in violation of section 22 of the Medical Practice act, approved

June 25, 1917. He has prosecuted this writ of error direct to this court, the constitutionality of a statute being involved.

Section 22 of the Medical Practice act provides that any person who, not being then licensed to practice to treat human ailments without the use of drugs or medicines and without operative surgery, shall treat human ailments by such methods shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine of not less than $25 nor more than $200, or confined in the county jail not more than one year, or punished by both such fine and imprisonment, in the discretion of the court. There is no question of the violation of said section by plaintiff in error. His main defense in this case is that section 5 of the act, which fixes the minimum standards of professional education required to practice medicine and surgery in all their branches and for treating human ailments without the use of drugs or medicine or operative surgery is invalid because unreasonable and discriminatory, violative of section 1 of article 2 of the constitution of Illinois, and also of the due process clause of the fourteenth amendment to the Federal constitution. That section, so far as material to the issues in this case, provides as follows:

"Sec. 5. Minimum standards of professional education are fixed as follows:

"1. For the practice of medicine and surgery in all their branches:

"(a) For an applicant, who is a graduate of a medical college prior to July 1, 1922, that he is a graduate of a medical college deemed to be reputable and in good standing at the time of his graduation and completed a course of study in such medical college in accordance with the laws to regulate the practice of medicine and the rules of the State Board of Health established and in force at the time of graduation. * * *

"2. For the practice of any system or method of treating human ailments without the use of drugs or medicine

and without operative surgery; that the applicant is a graduate of a professional school, college or institution teaching the system of treating human ailments for which the applicant desires to be licensed, which requires as a prerequisite to graduation four years' course of instruction, the time elapsing between the beginning of the first year and the ending of the last, or fourth year to be not less than forty months, and which is deemed to be reputable and in good standing." (Laws of 1917, p. 580.)

If the section fixing the requisite qualifications of plaintiff in error to obtain a license to practice his profession is invalid there can be no penalty under section 22 imposed against him under this indictment. This is so because sections 2, 3 and 4 of the act provide, in substance, that no person shall practice medicine and surgery or any of the branches thereof, or any system or method of treating human ailments without the use of drugs or medicine or surgery, without a license so to do; and no person shall, except as otherwise provided in the act, hereafter be licensed to practice medicine, or any other system or method of treating human ailments, unless he shall pass a satisfactory examination conducted by the Department of Registration and Education, and shall make application, submit evidence verified by oath and satisfactory to the department that he is twenty-one years of age or over, of good moral character, and has the professional and preliminary education required by the act. If he has not the professional qualifications required by the statute he cannot, under said sections, even be admitted to an examination; and that was the substance of the information plaintiff in error received when he applied to the Department of Registration and Education for examination.

Chiropractic is a drugless method of treating ailments of the human body, chiefly by manipulations of the spinal column with the hand. The theory of this system as explained in this record is, that when the spinal column is in

all its parts in place and performing its proper functions and the nerves running therefrom to the various organs and parts of the body are undisturbed and performing their functions, many but not all of the ills to which the human body is susceptible do not and cannot take place. To state it differently and more understandingly, the theory of this science is that if any of the vertebræ of the spine are seriously affected or partially dislocated, such affections or subluxations generally cause disturbances in various organs and parts of the body by reason of the fact that the nerves coming from the part of the spinal column affected or partially dislocated are impinged upon or pinched and cannot by reason thereof perform their proper functions. It is claimed by the advocates of this system that these disturbances or bodily ills can be, and are many times, completely cured by the chiropractor by manipulating the spine with the hand and thereby removing the seat of the trouble. It is not claimed that all ills and diseases of the human body can be cured by this science or relieved, but that such ills and diseases as are caused by injuries and subluxations of the spinal column may be thus relieved and cured.

It is not the province of the courts to extol or belittle chiropractic, osteopathy or medicine and surgery. They are all now established as useful professions, and as time has progressed it has been thoroughly demonstrated that all of them have accomplished, and are daily accomplishing, the relief and cure of human ailments. Constantly comes proof before the courts that chiropractic, which apparently is a limited practice of osteopathy, does enable the chiropractor to relieve and cure many of the ailments of human beings and that the practice of this science is in no way deleterious to the human body. That is the proof in this record and such is the proof that has been made in many other cases that have been reviewed by courts of last resort. (*Board of Medical Examiners* v. *Freenor,* 47 Utah, 430; *State* v. *Smith,* 233 Mo. 242; *State* v. *Johnson,* 84 Kan. 411; *Nor-*

*man* v. *Hastings,* (Tenn.) not yet reported.) In the last case cited, as shown by a certified copy of the opinion filed in this case, the Supreme Court of Tennessee said of chiropractic: "This science of healing is well developed and recognized in many jurisdictions and many believe in its efficacy." The court further said that chiropractors can not be classed along with charlatans and fakers, and that it is not suggested that the practice of the science is in any way deleterious to the human body. The statute now in question recognizes such science as a useful and legal method of treating human ailments and prescribes· what are deemed the necessary professional education and other qualifications to practice such method of healing. We must therefore in this consideration treat chiropractic as a useful and lawful business, science or profession and not as one dangerous or unlawful in its exercise and subject to abatement or destruction by unreasonable and arbitrary requirements, but as a profession or business that may be regulated by provisions prescribing reasonable requirements of those who apply to practice that profession, without unlawful or unjust discrimination.

As one means of protecting the community against the consequences of ignorance and incapacity the State may exact in many pursuits a certain degree of skill and learning upon which the community may confidently rely, its possession being generally ascertained upon an examination of the parties by competent persons or inferred from a certificate to them in the form of a diploma or license from an institution established for instruction on the subjects, scientific and otherwise, with which such pursuits have to deal. This exercise of the police power of the legislature is particularly necessary and permissible in the profession of medicine and surgery and in the profession of the practice of the law. (6 R. C. L. 220.) The right to follow either one of these professions is one of the fundamental rights of citizenship. A person's business, profession or oc-

cupation is at the same time "property" within the mean-
ing of the constitutional provision as to due process of
law, and is also included in the right to liberty and the pur-
suit of happiness.  (*Butcher's Union Slaughter-house Co.*
v. *Crescent City Stock Landing Co.* 4 Sup. Ct. 652.)  The
power of the legislature to impose restrictions on a lawful
calling or profession must be exercised in conformity with
the constitutional requirement that such restrictions must
operate equally upon all persons pursuing the same business
or profession under the same circumstances.  It is the right
and power of the legislature to make reasonable require-
ments with reference to examination and qualifications to
practice medicine, such as will keep parties who practice this
profession abreast with the progress of the times.  Courts
can only interfere when such provisions and laws become
arbitrary and unreasonable and not in a spirit of advancing
the science and benefiting and protecting the people among
whom it is practiced.  In this case it was a question for
the court, and not for the jury, to determine the validity
of the statute.  The question whether or not a statute is
constitutional is never a question for the jury.  (23 Am.
& Eng. Ency. of Law,—2d ed.—552.)  Courts hesitate to
declare an act unconstitutional, and it must be clearly so
to justify the courts in doing it, but where a statute vio-
lates the due process clause of the fourteenth amendment
or does not impose upon all persons of like age, sex and
condition the same restrictions in their business or profes-
sion, it is the duty of the court to declare the act void.

The Supreme Court of Ohio in the case of *State* v. *Gra-
vett*, 55 L. R. A. 791, declared a legislative enactment void
which discriminated against osteopathists by requiring them
to hold diplomas from a college which required four years
of study as a condition to their obtaining limited certifi-
cates, which would not permit them to prescribe drugs or
perform surgery and which did not require such time and
study from those contemplating the regular practice as a

condition to their obtaining unlimited certificates for the practice of medicine and surgery. For like reasons we must hold that section 5 of the statute now in question is void because it unlawfully and unjustly discriminates against one class of physicians, or those desiring to become physicians, by requiring that before they can practice treating human ailments without the use of drugs, medicine or operative surgery they must be graduates of a professional school, college or institution teaching that system which requires as a prerequisite for graduation a four-year course of instruction, while for one who desires to practice medicine and surgery in all their branches the only professional education required is that he be a graduate of a medical college prior to July 1, 1922, deemed to be reputable and in good standing at the time of his graduation, and has completed a course of study in such college in accordance with the law and the rules of the State Board of Health established and in force at the time of his graduation. It is sufficient under this section if the medical college was in good standing and repute at the time of his graduation, no matter whether it prescribed a two-year, three-year or four-year course. We are not prepared to hold that requiring four years' professional education before a chiropractor or osteopath is allowed to practice his profession is unreasonable or unjust. Such a question is a question, in the first instance, for the legislature, and the legislature is presumed to have investigated the question for itself in ascertaining what is best for the good of the profession and for the people among whom such profession is practiced; but the legislature cannot discriminate against chiropractors or osteopaths as to the time of professional education required, where no reason can be perceived for such discrimination. The act itself discloses clearly that there is an unjust discrimination against chiropractors and osteopaths. Section 11 of the act provides that the examination of those who desire to practice under the limited certificate shall be

of the same character as that required of those who desire to practice medicine and surgery in all their branches, excepting therefrom materia medica, therapeutics, surgery, obstetrics and theory and practice. Surely, then, there is no reason for providing that the limited professional education of one class of physicians shall be greater or for a longer time than that for those practicing medicine and surgery in all their branches.

The regulation of the Department of Registration and Education to the effect that plaintiff in error and his class of physicians are required to accompany their application by letters of recommendation with regard to their moral and professional character from at least two reputable medical men or osteopathic physicians is arbitrary and unreasonable. The prejudice existing against chiropractors by medical men and osteopaths is known to be intense and in many cases very unreasonable. For a chiropractor to have to conform to such a regulation would in all probability result in his being excluded from any examination whatever by reason of his inability to obtain such a certificate, although he might be able to establish a good moral character and a good professional standing by good, competent men in his own or other professions or callings outside of the medical profession. Such rules and regulations of the board are subject to review by the courts to determine whether or not they are reasonable or unreasonable and discriminatory. *People* v. *Kane,* 288 Ill. 235.

Other questions are presented in the record on the admission of evidence and in the giving of and refusing instructions that we do not deem necessary to consider. The court should have held the act in question unconstitutional and have so instructed the jury.

The judgment of the county court is reversed.

*Judgment reversed.*