THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN J. McGINLEY, Plaintiff in Error.

*Opinion filed February 24, 1928.*

1. MEDICINE AND SURGERY—*section 60 of Administrative Code does not discriminate against chiropractors.* The provision of section 60 of the Administrative Code for appointment of five examiners, who shall be reputable physicians licensed to practice medicine, to assist the Department of Registration and Education in conducting examinations and issuing licenses to treat human ailments, does not discriminate against chiropractors, in violation of section 2 of article 2 of the constitution, concerning special legislation, as under sections 9 and 20 of the Medical Practice act the department is empowered to appoint other examiners and is not permitted to act arbitrarily in conducting examinations or issuing licenses, its rules being subject to review by the courts as to their fairness, reasonableness and impartiality. (*People* v. *Love,* 298 Ill. 304, distinguished.)

2. SAME—*provisions of section 5 of Medical Practice act requiring applicant for license to have attended school are not discriminatory.* Subdivisions (*a*) and (*b*) of paragraph 2 of section 5 of the Medical Practice act, requiring an applicant for a restricted license to treat human ailments to have been a "resident" student and a graduate of a professional school, college or institution, is not invalid as discriminating against such applicants, as the legislature has power to make such requirements as will qualify all classes of persons treating human ailments to thoroughly understand their profession, and the word "resident" merely means that the applicant must have attended and graduated from a recognized reputable professional school teaching the branch of science practiced, which is not an unreasonable requirement.

3. CRIMINAL LAW—*when verification to an information is sufficient.* While the verification to an information must be sworn to positively, so that if false a charge of perjury may be assigned thereon, it is not required that the affidavit technically and specifically describe the exact offense charged in the information, and it is sufficient where the affidavit states positively that the "within information" is true.

DUNCAN, J., dissenting.

WRIT OF ERROR to the County Court of Rock Island county; the Hon. GEORGE D. LONG, Judge, presiding.

· FRANCIS C. KING, for plaintiff in error.                    ॰

OSCAR E. CARLSTROM, Attorney General, BENJAMIN S. BELL, State's Attorney, JAMES B. SEARCY, and DAN H. McNEAL, (EDWARD L. EAGLE, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

The State's attorney of Rock Island county filed an information on March 18, 1926, in the county court of that county, charging John J. McGinley (hereafter referred to as plaintiff in error) with having violated the Medical Practice act. The information consisted of three counts. The first count charged that plaintiff in error treated human ailments without the use of drugs or medicine or operative surgery without having a valid license to treat human ailments. The second count charged that he treated human ailments by a system or method of treatment known as chiropractic without having a valid license to treat human ailments by such system. The third count charged that he maintained an office for the examination or treatment of human ailments without possessing a valid license therefor. The defendant pleaded not guilty and a trial was had before a jury, which returned a verdict finding him guilty upon each of the three counts of the information. Motions for new trial and in arrest of judgment were overruled. The abstract states the court rendered judgment upon the verdict but does not show what the judgment was. A writ of error has been sued out of this court to review the judgment.

Counsel for plaintiff in error contends that section 60 of the Civil Administrative Code, (Smith's Stat. 1925, p. 2439,) and subdivisions (*a*) and (*b*) of paragraph 2 of section 5 of the Medical Practice act, (Smith's Stat. 1925, p. 1675,) are unconstitutional and void in so far as they relate to plaintiff in error; that the verification to the in-

formation is insufficient to support it, and that the sentence imposed is erroneous.

The Medical Practice act provides that no person shall practice medicine or surgery, or any system of treating human ailments, without a valid license therefor, and, except as otherwise provided in the act, no person shall receive such a license unless he shall satisfactorily pass an examination of his qualifications therefor, which examination shall be given by the State Department of Registration and Education. The same act also provides that the examinations shall be conducted under rules and regulations prescribed from time to time by such department. Section 60 of the Administrative Code enumerates certain powers and duties which the Department of Registration and Education shall have and perform in connection with the examination and licensing of various professions, trades and occupations requiring licenses under the respective laws of the State. As is well understood, the director of registration and education is the presiding officer or official head of that department and is clothed with authority to execute the powers and discharge the duties legally vested in such department. Under said section authority is given to conduct examinations to ascertain the qualification and fitness of applicants; to prescribe rules and regulations for a fair and wholly impartial method of examination; to prescribe rules and regulations defining for the respective professions and trades what shall constitute a school, college or university, or department of a university or other institution, reputable and in good standing, and to determine whether the same is such a place of learning and whether it is reputable; to establish a standard of preliminary education necessary for admission to a school, college or university and to require proof of the enforcement thereof by such schools; and to conduct hearings to revoke or refuse renewal of licenses and to revoke or refuse the same. Following the powers just enumerated is this provision:

"None of the above enumerated functions and duties shall
be exercised by the Department of Registration and Edu-
cation, except upon the action and report in writing of per-
sons designated from time to time by the director of regis-
tration and education to take such action and to make such
report, for the respective professions, trades and occupa-
tions as follows:" Then follow several paragraphs relative
to such reports for various professions, trades and occu-
pations, among which is the following: "For the medical
practitioners, and midwives, five persons, all of whom shall
be reputable physicians licensed to practice medicine and
surgery in this State, no one of whom shall be an officer,
trustee, instructor or stockholder or otherwise interested,
directly or indirectly, in any medical college or medical in-
stitution. For the purpose of preparing questions and rat-
ing papers on practice peculiar to any school, graduates of
which may be candidates for registration or license, the di-
rector may designate additional examiners whenever occa-
sion may require."

Plaintiff in error contends that section 60 of the Ad-
ministrative Code is unconstitutional because it violates sec-
tion 2 of article 2 of the State constitution, in that it is
class legislation, discriminatory, arbitrary and unreason-
able. The substance of counsel's contention in this regard
is, that chiropractic is a separate and distinct science and
the treatment by such system is entirely different in theory
and practice from that used by the physician and surgeon,
yet the chiropractor is compelled, under the law, to be ex-
amined by, and his present qualifications, his preliminary
education and the issuance of a license to practice chiro-
practic are subject to the supervision of, a board of five
persons who are physicians licensed to practice medicine
and surgery in Illinois. It is at least intimated that physi-
cians and surgeons are not fully competent to give proper
examinations, make correct rules for such examinations and

determine what shall comprise a correct course of study or properly equipped institution or school for the chiropractor. It is also stated that the chiropractor is placed or forced under the supervision and will of his rival or competitor— the physician and surgeon.

We are warranted in saying that so far as this record is concerned there is no showing whatever concerning the preliminary education of plaintiff in error, that he ever prepared himself to practice chiropractic, ever made application for license or took any examination therefor. The case of *People* v. *Love,* 298 Ill. 304, is cited in support of plaintiff in error's contention. It is unnecessary to state all the facts in that case, which involved the conviction of a chiropractor for treating human ailments without a license. One of the points raised therein was, that under a regulation of the Department of Registration and Education the defendant and other persons in his class of restricted physicians were required to accompany their applications to take the examination for license by letters of recommendation as to their moral and professional character from at least two reputable medical men. The court referred to the intense and frequently unreasonable prejudice then existing against chiropractors by medical men, and held the regulation to be arbitrary and unreasonable because such a regulation would in all probability prevent or exclude a chiropractor from even taking the examination for a license. That point in the *Love case* is somewhat different from the situation here presented, as we view it. Without question, the legislation included in the Medical Practice act and the Administrative Code contemplates a fair, impartial and reasonable application of the law as well as of the rules and regulations of the Department of Registration and Education, and there appears to be no arbitrary regulation or unreasonable enactment presented in this case which would necessarily prevent plaintiff in error from taking an examination to secure a license.

329—12

The plan of the Medical Practice act contemplates two kinds or classes of licenses to be issued to physicians. One authorizes the practice of medicine in all its branches, and the other permits the treating of human ailments without the use of drugs or medicine and without operative surgery. The recipient of the latter kind is restricted to the use of the method or system designated in his application as the one he would practice. Under the plan adopted by the legislature, the licensee authorized to practice medicine in all its branches may, without limitation, use any method or system for the treatment and healing of human ailments. A standard of attainment and ability was necessary for the enactment of any worth-while or protective legislation upon the subject, and the requirements for securing an unrestricted license are much more strict and rigid. It is necessary in the situation here being considered and in accordance with the legislative plan, for some capable persons to compose the so-called examining medical board. Manifestly, no more efficient and capable persons could be found to pass upon an applicant's right to receive a license to treat human ailments, whether by restricted or unrestricted methods, than five reputable and licensed physicians. The director of the department, whose duty it is to conduct the examinations of and license physicians, may or may not personally be fully capable of conducting examinations for license and have complete supervision over that profession. Hence the director is to be assisted by the medical examining board. This examining committee or board shall be composed of licensed and reputable physicians, one or all of whom may also be graduates of chiropractic schools. Part of section 60 of the Administrative Code previously quoted provides that "for the purpose of preparing questions and rating papers on practice peculiar to any school, graduates of which may be candidates for registration or license, the director may designate additional examiners whenever occasion may require." It is true, this provision

is not couched in mandatory language, but we cannot presume that the powers conferred upon the department will be exercised arbitrarily. Section 9 of the Medical Practice act (Smith's Stat. 1925, p. 1676,) provides: "Examinations of applicants who seek to practice any system or method of treating human ailments without the use of drugs or medicines and without operative surgery shall be the same as required of applicants who seek to practice medicine in all of its branches, excepting therefrom *materia medica,* therapeutics, surgery, obstetrics, and theory and practice, and shall be such in the judgment of the department as will determine the qualifications of the applicant to practice the particular system or method of treating human ailments without the use of drugs or medicines and without operative surgery which he specifically designated in his application as the one which he would undertake to practice." Section 20 of the same act provides: "The provisions of this act shall not be so construed as to discriminate against any system or method of treating human ailments, or against any medical college, or any professional school, college or institution teaching any system or method of treating human ailments, on account of any such system or method which may be taught or emphasized in such medical college, or in such professional school, college or institution." It is also provided by the last paragraph of section 60 of the Administrative Code, that "whenever the director is satisfied that substantial justice has not been done either in an examination or in the revocation of or refusal to renew a license, certificate or authority, he may order re-examinations or rehearings by the same or other examiners." A study of the Medical Practice act and the Administrative Code clearly shows the legislative intention for a fair administration and application of the law pertaining to those persons contemplating treating human ailments by the use of any method recognized for such purpose. The department is not permitted to arbitrarily con-

duct examinations of applicants or issue licenses according to its own whim or caprice, and any rules or regulations made or furthered by such department or its subdivisions are subject to the review of the courts as to their being fair, reasonable and impartial. (*People* v. *Witte,* 315 Ill. 282; *People* v. *Love, supra.*) We are of opinion the section does not offend against the constitution, as contended by plaintiff in error.

Counsel also questions the constitutionality of subdivisions (*a*) and (*b*) of paragraph 2 of section 5 of the Medical Practice act, for the reason that they are class legislation, discriminatory and arbitrary and because they grant special privileges. The beginning of the first sentence of each subdivision is as follows: "For an applicant who was a resident student and who is a graduate * * * of a professional school, college or institution." One contention is, that the word "resident" means a student residing on the college campus or grounds or possibly within the State, and hence there are requirements of such a student for minimum standards of professional education but no requirements exist for a non-resident student. Another contention is, that an applicant to practice medicine in all its branches is only required to be a graduate of a medical college and there is no provision as to his being a resident or non-resident. A further contention is, that the section discriminates against correspondence schools and persons who have secured their education in a practitioner's office. It seems useless to discuss in detail what we have previously said in cases of this type relative to the power of the legislature in enacting certain requirements of education and character for persons seeking a license to treat human ailments. In *People* v. *Walder,* 317 Ill. 524, this court said: "Any person who professes to practice any system of treating human ailments has to deal with those mysterious influences upon which health and life depend, and no person can claim the right to enter that profession

who does not have a knowledge of the human body, its complicated parts and their relation to each other, and a knowledge of the effect upon the human body of substances which might cause sickness or destroy life. Whatever method of treating human ailments is used by a physician, he should be able to detect readily the presence of disease and prescribe appropriate remedies." Long and careful preparation is required of any person desiring to engage in the medical profession, and no one should be authorized to practice that profession without the necessary skill and learning. (*People* v. *Witte, supra.*) The legislature may make such requirements as will qualify all classes of persons treating human ailments to thoroughly understand their profession and protect the public against those who are inefficient and unworthy. (*People* v. *Graham,* 311 Ill. 92.) It is generally understood and conceded that persons preparing themselves for the practice of medicine necessarily attend some reputable established medical school or college for their medical education, and such was the plan of, and the requirement enacted into law by, the legislature. The word "resident" appearing in section 5 is of no serious import from a constitutional standpoint, and merely means that a student seeking to become a restricted practitioner of medicine must attend and graduate from a recognized reputable professional school teaching such branch of medicine. We are of opinion said subdivisions of section 5 are not subject to the objections raised by plaintiff in error.

It is further contended that the verification to the information is insufficient. The affidavit was as follows: "Lowes E. Cralle, after being duly sworn, on his oath deposes and says that the within information against John J. McGinley for the crime of treating human ailments without a license is true." The rule is that the affidavit to an information must be sworn to positively, so that if it is false a charge of perjury may be assigned on the affidavit.

The affidavit does not technically and specifically describe the exact offense charged in the information but it is positively sworn to that the "within information" is true, and it is not a requisite that the verification describe the offense charged.    We think the verification to the information is sufficient.

It is lastly contended that the sentence imposed is erroneous.    The abstract does not show what the judgment of the court was, and this court has consistently refused to search the record for errors not shown by the abstract.

The judgment of the county court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE DUNCAN, dissenting: I do not agree that the Medical Practice act is valid. In my opinion the act is void for unjust discrimination.

---

(No. 18595.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HARRY BLADES *et al.* Plaintiffs in Error.

*Opinion filed February 24, 1928.*