128 Ill.2d 322 (1989)
538 N.E.2d 1140
MARY ANN POTTS et al., Appellees,
v.
THE ILLINOIS DEPARTMENT OF REGISTRATION AND EDUCATION, Appellant.
No. 66739.
Supreme Court of Illinois.
Opinion filed April 20, 1989.
Rehearing denied May 26, 1989.
*323 *324 Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and William D. Frazier, Assistant Attorney General, of Chicago, of counsel), for appellant.
James T. Londrigan and Timothy J. Londrigan, of Londrigan & Londrigan, of Springfield, for appellees.
Saul J. Morse, of Morse, Giganti & Appleton, of Springfield, for amicus curiae Illinois State Medical Society.
Judgment reversed.
JUSTICE CLARK delivered the opinion of the court:
In this appeal we are presented with a constitutional challenge to the Medical Practice Act of 1987 (the Act) *325 (Ill. Rev. Stat. 1987, ch. 111, par. 4400-1 et seq.), which provides for the licensure of doctors of medicine. The circuit court of Sangamon County found that the Act deprived the appellees of their property right in the practice of their profession without due process of law and held it to be unconstitutional as applied to the practice of naprapathy. Appellant, the Illinois Department of Registration and Education, filed this direct appeal pursuant to Supreme Court Rule 302(a)(1) to challenge the court's ruling. (107 Ill.2d R. 302(a)(1).) The Illinois State Medical Society was granted leave to file an amicus curiae brief in support of the appellant's position.
The appellees in this case, Mary Ann Potts and Irwin A. Kossack, are both naprapaths. Naprapathy, broadly defined, is "a therapeutic system of drugless treatment by manipulation depending on the theory that disease symptoms result from disorder in the ligaments and connective tissues." (Webster's Third New International Dictionary 1502 (3d ed. 1971).) In October 1984, Potts filed an application with the Illinois Department of Registration and Education (the Department) for a license to practice medicine without drugs or operative surgery under the Medical Practice Act. Ill. Rev. Stat. 1983, ch. 111, par. 4401 et seq.
At that time, section 2 of the Act provided:
"No person shall practice medicine, or any of its branches, or midwifery, or any system or method of treating human ailments without the use of drugs or medicines and without operative surgery, without a valid, existing license to do so." Ill. Rev. Stat. 1983, ch. 111, par. 4403.
Section 4 provided in part:
"Each applicant for such examination shall:
* * *
3. Designate specifically the name, location, and kind of professional school, college, or institution of which he *326 is a graduate and the system or method of treatment under which he seeks, and will undertake, to practice * * *." Ill. Rev. Stat. 1983, ch. 111, par. 4410.
Pursuant to statutory requirements, Potts indicated that she was a graduate of a naprapathic institution and desired to practice naprapathy. On April 5, 1985, Potts was informed by the Department that her application had been denied as a matter of law based upon the Department's determination that the Medical Practice Act, as it existed at that time, did not contemplate the licensure of naprapaths. The Department indicated that based upon its interpretation of the Act, only osteopaths and chiropractors could be licensed to treat human ailments without drugs or surgery.
Potts filed a complaint for administrative review in the circuit court of Sangamon County, requesting judicial review of the Department's ruling. On administrative review, the circuit court ordered the Department to determine whether naprapathy was a system or method of treating human ailments which entitled proper applicants to licensure.
On the Department's motion, the trial court certified that the question of whether naprapathy was a system of treating human ailments as contemplated by the Medical Practice Act was a proper subject for interlocutory appeal pursuant to Supreme Court Rule 308(a) (107 Ill.2d R. 308(a)). The appellate court granted the Department's petition for interlocutory review and held that the Department had erroneously interpreted the Medical Practice Act. It held that naprapathy was a system of treating human ailments within the purview of the Medical Practice Act and that naprapaths were eligible for examination and licensure. 145 Ill. App.3d 960.
Subsequent to the appellate court's decision, the legislature enacted the Medical Practice Act of 1987 (Ill. Rev. Stat. 1987, ch. 111, par. 4400-1 et seq.) to regulate *327 the practice of medicine in Illinois. Section 3 of the Act prohibits any person from practicing medicine unless he possesses a license issued under the Act. (Ill. Rev. Stat. 1987, ch. 111, par. 4400-3.) The Act provides for two classes of licenses: one which authorizes the practice of medicine in all its branches, and the other, which has been referred to as a limited license, which permits the treatment of human ailments without the use of drugs or operative surgery. (Ill. Rev. Stat. 1987, ch. 111, par. 4400-11.) Sections 11(A) and (B) of the Act set out the minimum standards of professional education required under the Act for a license to practice medicine. (Ill. Rev. Stat. 1987, ch. 111, pars. 4400-11(A), (B).) Section 11(A) applies to the practice of medicine in all its branches, and requires graduation from a medical or osteopathic college as a condition of licensure. (Ill. Rev. Stat. 1987, ch. 111, par. 4400-11(A).) Section 11(B) applies to the "treating [of] human ailments without the use of drugs and without operative surgery" and requires that applicants be graduates of a reputable chiropractic college. Ill. Rev. Stat. 1987, ch. 111, par. 4400-11(B).
Individuals not licensed pursuant to the Act are prohibited from diagnosing or treating human ailments. Section 49 provides in part:
"If any person holds themselves out to the public as being engaged in the diagnosis or treatment of ailments of human beings; or suggests, recommends or prescribes any form of treatment for the palliation, relief or cure of any physical or mental ailment of any person with the intention of receiving therefor, either directly or indirectly, any fee, gift, or compensation whatsoever; or diagnoses or attempts to diagnose, operate upon, profess to heal, prescribe for, or otherwise treat any ailment, or supposed ailment, of another; or maintains an office for examination or treatment of persons afflicted, or alleged or supposed to be afflicted, by any ailment; or attaches the title *328 Doctor, Physician, Surgeon, M.D., D.O. or D.C. or any other word or abbreviation to their name, indicating that they are engaged in the treatment of human ailments as a business; and does not possess a valid license issued pursuant to this Act, they shall be sentenced as provided in Section 59." (Ill. Rev. Stat. 1987, ch. 111, par. 4400-49.)
Pursuant to section 59, anyone violating the Act can be prosecuted for offenses ranging from a Class A misdemeanor to a Class 4 felony. Ill. Rev. Stat. 1987, ch. 111, par. 4400-59.
On June 15, 1987, the Department informed Potts that the Medical Practice Act of 1987 rendered the decision of the appellate court (145 Ill. App.3d 960) moot and that pursuant to the new act, the Department lacked statutory authority to issue licenses for the practice of naprapathy.
Appellees filed a two-count complaint challenging the application of the Medical Practice Act of 1987. Count I sought administrative review of the Department's interpretation of the new act; count II sought a declaratory judgment declaring the Medical Practice Act of 1987 unconstitutional as applied to naprapaths.
The circuit court of Sangamon County held that the Medical Practice Act of 1987 violates sections 1 and 2 of article I of the Constitution of the State of Illinois and the fourteenth amendment to the Constitution of the United States because it deprives the appellees of their property right in the practice of naprapathy without due process of law. We granted review. 107 Ill.2d R. 302(a)(1).
Three issues are raised in this appeal: (1) whether the Medical Practice Act of 1987 deprives the appellees of their property right in the practice of naprapathy without due process of law; (2) whether the Act violates Federal and State equal protection guarantees; and (3) *329 whether the Act abridges a patient's right to choose a mode of treatment.
We first address the issue of whether the Medical Practice Act of 1987 violates the due process clauses of the United States and Illinois Constitutions. As noted previously, the Act contemplates the licensure of only medical and osteopathic physicians to practice medicine in all its branches and chiropractic physicians to treat human ailments without the use of drugs or surgery; there is no provision in the Act for the licensure of naprapaths. (Ill. Rev. Stat. 1987, ch. 111, par. 4400-11.) The appellees contend that the effect of the statute is to deprive them of the right to practice their profession without due process of law. The Department contends that the statute was enacted to protect the public from incompetent practitioners and is a valid exercise of the State's police power.
The starting point of our due process inquiry must be whether the statute purports to regulate a fundamental right. Appellees argue that the right to pursue a profession is a fundamental right and any statute which infringes upon that right must be examined under strict scrutiny. Under strict scrutiny, legislation which significantly interferes with the exercise of a fundamental right cannot be upheld unless it is supported by compelling State interests and is closely tailored to effectuate only those interests. (Boynton v. Kusper (1986), 112 Ill.2d 356, 369.) The Department, on the other hand, urges us to apply the familiar rational basis test, citing People v. Gurell (1983), 98 Ill.2d 194, as support for its position that the right to practice one's profession is not a fundamental right. Under the rational basis test, a statute will be upheld if it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor discriminatory. Boynton v. Kusper (1986), 112 Ill.2d 356, 367.
*330 Although not discussed in Gurell, this court in the past has referred to the right to pursue one's chosen profession as a "fundamental right[] of citizenship." (People v. Love (1921), 298 Ill. 304, 310; see also Lasdon v. Hallihan (1941), 377 Ill. 187.) We note, however, that while the term "fundamental right" was used, the court applied the rational basis test in evaluating the challenged legislation. For example, in Love this court recognized the "right and power of the legislature to make reasonable requirements with reference to examination and qualifications to practice medicine," and noted that "[c]ourts can only interfere when such provisions and laws become arbitrary and unreasonable." (Love, 298 Ill. at 311.) Other cases have similarly applied the rational basis test to uphold legislation regulating occupations and professions. (See, e.g., Pozner v. Mauck (1978), 73 Ill.2d 250 (legislation upgrading licensing requirements for insurance solicitors is a reasonable exercise of the State's police power); Rios v. Jones (1976), 63 Ill.2d 488 (State licensing procedures requiring examination of foreign-educated physicians are a reasonable exercise of the State's police power); Wineblad v. Department of Registration & Education (1987), 161 Ill. App.3d 827 (statutory amendment requiring national certification of licensed physician's assistants reasonably related to State's licensing scheme).) Accordingly, we find that the right to pursue a profession is not a fundamental right for due process purposes and legislation infringing upon that right need only be examined under the rational basis test. See People v. Gurell (1983), 98 Ill.2d 194.
We next consider whether the statute bears a rational relationship to a proper legislative purpose. Both parties agree that the State has a legitimate interest in regulating medical professionals in order to protect the public welfare and that it is within the power of the legislature to set reasonable licensing requirements for individuals *331 practicing medicine in Illinois. Appellees contend, however, that the Medical Practice Act of 1987 goes beyond mere regulation and effectively prohibits the practice of naprapathy.
We do not agree. Upon review, we find nothing in the Act which prohibits the practice of naprapathy. Section 11(B) of the Act, which applies to persons "[t]reating human ailments without drugs and without operative surgery" (Ill. Rev. Stat. 1987, ch. 111, par. 4400-11(B)), does not restrict the practitioner to a specific method of treatment. Unlike the prior Medical Practice Act (Ill. Rev. Stat. 1983, ch. 111, par. 4401 et seq.) which restricted a licensee under a limited license to the practice of the system or method of treatment which he specifically designated in his application as the one he would undertake to practice (People v. Witte (1924), 315 Ill. 282, 286), the Medical Practice Act of 1987 contains no such provision. Under the present statute, an applicant need only designate the "category under which [he] seeks, and will undertake, to practice" (Ill. Rev. Stat. 1987, ch. 111, par. 4400-9(C)), not the system or method of treatment he will administer. Thus, under a plain reading of the statute, a graduate of a chiropractic college licensed to treat human ailments without drugs and without operative surgery may employ the drugless therapy of his choice. Similarly, since physicians licensed under section 11(A) of the Act are necessarily permitted to employ the same agencies for healing as are used by the restricted practitioners (People v. Witte (1924), 315 Ill. 282, 287), they may also practice naprapathy.
Having determined that practitioners holding limited licenses pursuant to section 11(B) can practice naprapathy, we must consider whether it is reasonable for the legislature to require that all drugless practitioners be graduates of chiropractic colleges. Appellees maintain that there is no rational basis for requiring that naprapaths *332 study the theories and therapeutics of a competing school of healing in order to receive a license to practice medicine. They argue that it would be more reasonable for the legislature to prescribe requirements for naprapaths.
We note at this point that the appellees have a substantial burden in establishing their position. A statute is presumed to be valid and the burden is on the party challenging its validity to prove that it is irrational. (People v. Gurell (1983), 98 Ill.2d 194, 204-05.) As long as there is a conceivable basis for finding a rational relationship, the legislation will be upheld. Harris v. Manor Healthcare Corp. (1986), 111 Ill.2d 350, 368.
Upon review, we find that the appellees have not sustained their burden. We recognize that naprapaths have a property right in the practice of their profession and that that right is entitled to due process protection. (Coldwell Banker Residential Real Estate Services of Illinois, Inc. v. Clayton (1985), 105 Ill.2d 372, 397.) However, as we stated in Rios v. Jones (1976), 63 Ill.2d 488, 497:
"The fact that the plaintiffs possess property rights and are entitled to due process protection * * * does not mean that those rights cannot be affected by State legislation. As the United States Supreme Court declared in Goldfarb v. Virginia State Bar, 421 U.S. 773, 792, 44 L.Ed.2d 572, 588, 95 S.Ct. 2004, 2016: `[T]he States have a compelling interest in the practice of professions within their boundaries, and * * * as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions.' The demands of due process are proportional to the weight of the interest being protected in balancing that interest against the countervailing interests of society. (Powell v. Jones, 56 Ill.2d 70, 78.) If, after balancing these interests, the State's exercise of its police power is *333 deemed to be reasonable, the legislation in question must be upheld." 63 Ill.2d at 497.
Having balanced the appellees' interests in the practice of naprapathy against the State's interest in protecting the public from unqualified medical practitioners, we find that the appellees' interests are not sufficient to render the statute unconstitutional. The State has a substantial interest in promoting the general welfare by licensing physicians. (Rios v. Jones (1976), 63 Ill.2d 488, 497.) The legislature is presumed to have investigated the question and ascertained what is best for the good of the profession and the good of the people among whom it is practiced. (People v. Love (1921), 298 Ill. 304, 312.) The question of whether the course chosen by the legislature to achieve a desired result is either wise or the best means available is not a proper subject of judicial inquiry. (Garcia v. Tully (1978), 72 Ill.2d 1, 10.) It is for the legislature, not the courts, to balance the advantages and disadvantages of the requirements. Williamson v. Lee Optical of Oklahoma, Inc. (1955), 348 U.S. 483, 487, 99 L.Ed. 563, 571, 75 S.Ct. 461, 464.
Additionally, we note that the appellate court's decision in Potts v. Department of Registration & Education (1986), 145 Ill. App.3d 960, requiring that the Department examine and license naprapaths, was issued approximately 10 months before the Medical Practice Act of 1987 was enacted. In amending the Medical Practice Act we presume that the General Assembly was aware of judicial construction of the earlier versions of the statute (People v. Badoud (1988), 122 Ill.2d 50, 55) and that it not only recognized the effect the new act would have upon naprapaths but deliberately chose that course of action. For the reasons stated herein, we find that section 11(B) of the Medical Practice Act of 1987, in requiring that applicants for limited licenses be graduates of *334 schools of chiropractic, does not violate due process of law.
We next consider the contention that the Medical Practice Act of 1987 discriminates against the appellees in violation of the equal protection provisions of the Federal and State Constitutions. The appellees contend that they are being denied equal protection of the law because chiropractors may be licensed to practice medicine pursuant to section 11(B) whereas the same privilege has been denied to naprapaths.
Under the traditional equal protection analysis used by this court in assessing both Federal and State equal protection challenges, a statutory classification must be reasonable and must rest on some ground of difference having a fair and substantial relation to the object of the legislation, so that persons similarly situated are treated alike. (Jenkins v. Wu (1984), 102 Ill.2d 468, 477.) In the absence of a fundamental right, the legislature may even differentiate between persons similarly situated if there is a rational basis for doing so. People v. Esposito (1988), 121 Ill.2d 491, 501.
The classification at issue is based upon the education and training of the practitioners. Chiropractors, as a class, have characteristics different from naprapaths. These differences are evidenced in their theories as to the nature of disease, their education and the modalities they employ in their treatments. The enactment of section 11(B) indicates that the General Assembly has determined that only graduates of accredited chiropractic colleges possess the degree of skill and training necessary to practice medicine without the use of drugs or surgery in Illinois. It is possible that naprapaths are just as competent in the art of healing as are chiropractors. However, the legislature is not obligated to permit everyone who might be competent to treat human ailments to do so. (See Sutker v. Illinois State Dental Society (7th Cir. *335 1987), 808 F.2d 632, 636.) A State legislature may deal with matters of health and safety "one step at a time," addressing itself to the problem which it sees as being most acute and neglecting the others. (Williamson v. Lee Optical of Oklahoma, Inc. (1955), 348 U.S. 483, 489, 99 L.Ed. 563, 573, 75 S.Ct. 461, 465.) We find the classification to be reasonably related to the legitimate governmental objective of protecting the public from unqualified medical practitioners. Consequently, we hold that the statute does not violate equal protection guarantees.
Additionally, appellees allege that the Act abridges the rights of patients to choose a mode of treatment. We disagree. The Act does not preclude a patient from receiving naprapathic therapy, it only requires that those administering the treatment be licensed under the Act. As previously stated, such a requirement is a valid exercise of the police power of the State.
For the foregoing reasons, we uphold the constitutionality of section 11 of the Medical Practice Act of 1987. The judgment of the circuit court is reversed.
Judgment reversed.
WARD and CALVO, JJ., took no part in the consideration or decision of this case.