995 F.2d 772
 Joseph M. MITCHELL, Julie Duffy, William Dunbar, Pat Brown,
Gerald Pam, Marilyn Wiel, Kathleen Meierotto, Ruby
Woodley, Earl Woodley and Guy Guilbert,
Plaintiffs-Appellants,
v.
Gary L. CLAYTON, Stephen F. Selcke, Robert Behmer, M.D.,
David Fox, Lawrence L. Hirsch, M.D., Larry S. Patton, D.O.,
Warren Staley, M.D., Paul Tullio, D.C., and Department of
Professional Regulation, Defendants-Appellees.
 No. 92-3359.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 5, 1993.
Decided June 10, 1993.
 
 William E. Hourigan (argued), Bloomington, IL, for plaintiffs-appellants.
 Jennifer A. Keller, Asst. Atty. Gen. (argued), Office of the Atty. Gen., Civ. Appeals Div., Chicago, IL, for defendants-appellees.
 Before FLAUM and KANNE, Circuit Judges, and ENGEL, Senior Circuit Judge.*
 KANNE, Circuit Judge.
 
 
 1
 A group of Illinois acupuncturists and their prospective patients brought this suit challenging the constitutionality of the Illinois Medical Practice Act of 1987 ("MPA"). The district court concluded that the MPA did not violate the due process or the equal protection clauses of the Fourteenth Amendment and dismissed the plaintiffs' case for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Relying on Maguire v. Thompson, 957 F.2d 374 (7th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 73, 121 L.Ed.2d 38 (1992), we affirm.
 
 I.
 
 2
 The Medical Practice Act of 1987 ("MPA") governs the licensing of health care professionals in Illinois. An individual may not practice "medicine" without a valid license. 225 ILCS 60/3. According to the Illinois Supreme Court, performing acupuncture is practicing medicine. People v. Roos, 118 Ill.2d 203, 113 Ill.Dec. 81, 84, 514 N.E.2d 993, 996 (1987). Hence, an acupuncturist must obtain a license to practice in Illinois. The MPA provides for two types of medical licenses: a full license and a limited license. 225 ILCS 60/11. To obtain a full license, which permits one to practice medicine in all its branches, one must graduate from a medical or osteopathic college. 225 ILCS 60/11(A). To obtain a limited license, which permits one to treat human ailments without drugs and without operative surgery, one must graduate from a chiropractic college. 225 ILCS 60/11(B). Therefore, to practice acupuncture in Illinois, an individual must either graduate from a medical, osteopathic, or chiropractic college.
 
 
 3
 The plaintiff acupuncturists in this case have trained at professional acupuncture schools but have not graduated from a medical, osteopathic, or chiropractic college. As a result, they have been unable to obtain licenses to practice acupuncture. In an effort to rectify their problem, the plaintiffs filed this suit against defendant Clayton and other state officials, in their official capacities, as agents of the State Department of Education and Registration--the state agency responsible for implementing the MPA. The plaintiffs' initial complaint sought both monetary and injunctive relief. The defendants moved to dismiss the plaintiffs' claims for monetary relief, invoking the doctrine of qualified immunity; the district court denied the motion. 1990 WL 77519. On appeal, this court held that the defendants were entitled to qualified immunity, prohibiting monetary relief, because the "acupuncturists fail[ed] to state a claim for the violation of their constitutional rights," and that the prospective patients had no right "to select a particular medical treatment that the government reasonably has prohibited." Mitchell v. Clayton, No. 90-2377, slip op. at 2, 1992 WL 97981 (7th Cir. May 11, 1992) (amended June 3, 1992). On remand, the district court dismissed the plaintiffs' claims for injunctive relief relying on Mitchell and Maguire.
 
 
 4
 In this appeal, the plaintiff acupuncturists make three arguments in support of their request for injunctive relief: (1) the MPA is unconstitutional under the Fourteenth Amendment because it is not rationally related to any legitimate state purpose; (2) the MPA violates their substantive due process rights because they were eligible for licenses under the old act; and (3) portions of the MPA, as interpreted by state officials, discriminate against acupuncturists as a class of medical practitioners in violation of another provision of the MPA. In addition to the acupuncturists' challenges, the potential patient plaintiffs claim that the MPA denies them their rights to be treated by trained acupuncturists who are not chiropractic college graduates. Finding the plaintiffs' arguments without merit, we affirm the district court's dismissal.II.
 
 
 5
 The plaintiff acupuncturists argue that the MPA is unconstitutional because it bears no rational relationship to a legitimate state purpose. The plaintiffs recognize that because neither a fundamental right nor a suspect classification is involved in this case, the MPA must pass only a rationale basis test to be held constitutional. See Maguire, 957 F.2d at 376. Moreover, the plaintiffs concede that the state has a legitimate interest in protecting the public from unqualified medical practitioners. However, they claim a licensing scheme which bestows licenses to practice acupuncture on individuals who graduate from chiropractic schools--where acupuncture is not taught--and refuses to give licenses to individuals who graduate from professional acupuncture schools is not rationally related to the goal of protecting the public.
 
 
 6
 We rejected an identical argument made by naprapaths[1] in Maguire. Id. at 377. Concluding the educational requirements of the MPA were rationally related to the legitimate state goal of protecting the public, we stated:
 
 
 7
 [T]he General Assembly could have concluded that this level of education provides better training in theories of disease.... Logically, better training leads to better diagnosis and better treatment. While the naprapaths may have treated many people competently over the years, it is within the legislative prerogative to limit the practice of medicine to those who provide the safest service.
 
 
 8
 * * * * * *
 
 
 9
 [T]he legislature could rationally conclude that a person afflicted with disease or other serious medical problems not treatable by naprapathy might be induced to postpone or even forego necessary medical treatment while undergoing treatment by a naprapath. It would even be rational for a legislature to conclude that the training offered in a school of naprapathy would in fact be inadequate for proper medical diagnosis and treatment and therefore people seeking treatment from those who hold only a degree in naprapathy run a serious risk of either misdiagnosis or non-diagnosis of their ailment.
 
 
 10
 Id. at 377-78 (citation omitted).
 
 
 11
 The concerns expressed in Maguire regarding adequate training to properly diagnose apply equally to the acupuncturists in this case. Moreover, the fact that the legislature has yet to require chiropractic graduates to take acupuncture training to practice acupuncture does not make the MPA unconstitutional. The General Assembly is free to "take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind.... The legislature may select one phase of one field and apply a remedy there, neglecting the others." Williamson v. Lee Optical, Inc., 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955) (citation omitted). The plaintiffs do not argue that acupuncture is so materially different from naprapathy that Maguire should not apply. Nor do they invite us to overrule Maguire. Therefore, we reaffirm our holding in Maguire that the basic educational requirements of the MPA are rationally related to a legitimate state purpose; the MPA violates neither the plaintiffs' equal protection rights nor their substantive due process rights.
 
 
 12
 The plaintiff acupuncturists also claim that the MPA is unconstitutional as applied to certain plaintiff acupuncturists who were eligible for licensure under the 1923 Medical Practice Act ("the 1923 Act"), the predecessor to the MPA. According to the plaintiffs, these acupuncturists had a property right recognized by the Illinois Supreme Court and the new act unconstitutionally deprived them of their right to a license.
 
 
 13
 Prior to the enactment of the MPA in 1987, the 1923 Act and its amendments governed medical licensing in Illinois. The 1923 Act also provided for two types of medical licenses: full and limited. However, the educational requirements under the 1923 Act differed from those in the current act. To obtain a full license, an individual was required to graduate from a medical college. ILL.REV.STAT. ch. 111, p 4411 § 5.1 (repealed 1987). To obtain a limited license, an individual was required to graduate from a professional school "which taught the system or method of treating human ailments, which he specifically designated in his application as the one he would undertake in practice...." ILL.REV.STAT. ch. 111, p 4411 § 5.2 (repealed 1987).
 
 
 14
 On October 5, 1987, the Illinois Supreme Court held that acupuncturists could obtain limited licenses under § 5.2 because the practice of acupuncture did not constitute "operative surgery." People v. Roos, 118 Ill.2d 203, 113 Ill.Dec. 81, 85, 514 N.E.2d 993, 997 (1987). Therefore, if the 1923 Act had not been changed, a professionally trained acupuncturist who had not graduated from a chiropractic school would have been able to obtain a license. However, the 1923 Act was repealed. In fact, the MPA was enacted and became effective on May 22, 1987--even before the Roos case was decided; at the time Roos was decided, it was irrelevant. The MPA did not deprive the plaintiff acupuncturists of any vested rights.[2]
 
 
 15
 The plaintiff acupuncturists' final contention is that the MPA, as interpreted by officials of the Illinois State Department of Education and Registration and the Illinois Supreme Court, discriminates against acupuncturists as a class of medical practitioners, which is expressly forbidden by the MPA itself.[3] In essence, the plaintiffs' argument presents us with a pendent state law claim that state officials are violating state law. Under Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 103-23, 104 S.Ct. 900, 909-20, 79 L.Ed.2d 67 (1984), we may not exercise pendent jurisdiction to adjudicate claims that state officials are violating state law because such claims are barred in federal courts by the Eleventh Amendment. See also Lett v. Magnant, 965 F.2d 251, 256 (7th Cir.1992) ("the Eleventh Amendment bars a federal court from considering a pendent state law claim against state officials"); Bates v. Johnson, 901 F.2d 1424, 1428 (7th Cir.1990) ("a federal court lacks subject-matter jurisdiction to compel a state agency to adhere to state law"); Colon v. Schneider, 899 F.2d 660, 672 (7th Cir.1990) (same).
 
 
 16
 Finally, we reach the claims of the prospective patients of the aggrieved acupuncturists. They argue that the MPA deprives them of their constitutional right to have acupuncturists who have not been to chiropractic school treat their ailments. Notwithstanding Andrews v. Ballard, 498 F.Supp. 1038 (S.D.Tex.1980), in which the court held that the constitutional right of privacy included a patient's right to obtain acupuncture treatment, most federal courts have held that a patient does not have a constitutional right to obtain a particular type of treatment or to obtain treatment from a particular provider if the government has reasonably prohibited that type of treatment or provider. See Mitchell v. Clayton, No. 90-2377, slip op. at 2, 1992 WL 97981 (7th Cir. May 11, 1992); Connecticut v. Menillo, 423 U.S. 9, 11, 96 S.Ct. 170, 171, 46 L.Ed.2d 152 (1975) (no constitutional right to an abortion by a nonphysician); Roe v. Wade, 410 U.S. 113, 165, 93 S.Ct. 705, 733, 35 L.Ed.2d 147 (1973) (same); New York State Ophthalmological Soc'y v. Bowen, 854 F.2d 1379, 1389-91 (D.C.Cir.1988) (Medicare patients do not have a fundamental right to exclude peer review organizations from the determination of care they receive or to decide whether or under which circumstances a second surgeon may assist in cataract surgeries), cert. denied, 490 U.S. 1098, 109 S.Ct. 2448, 104 L.Ed.2d 1003 (1989); Carnohan v. United States, 616 F.2d 1120, 1122 (6th Cir.1980) (no constitutional "right to obtain laetrile free of the lawful exercise of government police power"); Rutherford v. United States, 616 F.2d 455, 457 (10th Cir.) (same), cert. denied, 449 U.S. 937, 101 S.Ct. 336, 66 L.Ed.2d 160 (1980).
 
 
 17
 As we have said, when no fundamental right is implicated, the challenged statute passes constitutional muster as long as the legislature had a rational basis for its enactment. Maguire, 957 F.2d at 376. We have already concluded that the MPA's educational requirements are rationally related to the legitimate state interest of public protection. The prospective patient plaintiffs do not have a constitutional complaint.[4]
 
 III.
 
 18
 The district court properly dismissed the plaintiffs' case pursuant to Federal Rule of Civil Procedure 12(b)(6).
 
 
 19
 AFFIRMED.
 
 
 
 *
 The Honorable Albert J. Engel, Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, is sitting by designation
 
 
 [1]
 Naprapaths treat human ailments by manipulating connective tissue
 
 
 [2]
 The plaintiffs would fare no better if the MPA did not go into effect until after the Roos decision. We find Potts v. Illinois Department of Registration & Education, 128 Ill.2d 322, 131 Ill.Dec. 584, 538 N.E.2d 1140 (1989), instructive. In that case, naprapaths who had been judicially granted the right to licensure ten months before the enactment of the MPA argued that the new act unconstitutionally eliminated their newly won rights. Id. 131 Ill.Dec. at 588-89, 538 N.E.2d at 1144-45. The Illinois Supreme Court disagreed, noting that the legislature may have amended the act to reverse the recent judicial construction granting the licensure right. Id. 131 Ill.Dec. at 589, 538 N.E.2d at 1145. The General Assembly may have anticipated similar judicial interpretations of the 1923 Act relating to acupuncturists when it chose to amend the basic educational requirements. Finally, we note that even if the acupuncturists had obtained licenses, the General Assembly still could have imposed additional educational requirements. See Brown v. McGarr, 774 F.2d 777, 782-83 (7th Cir.1985) (state may require a licensed professional to comply with additional requirements after a license is granted, and retroactive application of such requirements "satisfies due process if it is justified by a rational legislative purpose")
 
 
 [3]
 The MPA provides that:
 The provisions of this Act shall not be so construed nor shall they be so administered as to discriminate against any type or category of physician or against any medical, osteopathic or chiropractic college.
 
 
 [225]
 ILCS 60/34
 
 
 [4]
 We note that the Illinois Supreme Court reached an identical conclusion when faced with the same argument against the MPA from potential patients of aggrieved naprapaths. Potts, 131 Ill.Dec. at 590, 538 N.E.2d at 1146