EDUARDO GONZALES-BLANCO, M.D., *et al.*, Plaintiffs-Appellants and Cross-Appellees, *v.* GARY L. CLAYTON, Director, Illinois Department of Registration and Education, *et al.*, Defendants-Appellees and Cross-Appellants.—(Mount Sinai Hospital Medical Center of Chicago, Defendant-Appellee.)

First District (1st Division)   No. 82—562

Opinion filed November 1, 1982.

Cyriac D. Kappil, of Chicago (Bernard J. Ferguson and Michael R. Morow, of counsel), for appellants.

Roger L. Price, of Aaron, Schimberg, Hess, Rusnak, Deutsch & Gilbert, and Tyrone C. Fahner, Attorney General, both of Chicago (Karen Konieczny, Assistant Attorney General, of counsel), for appellees.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiffs appeal from an order of the circuit court of Cook County denying relief under their second amended complaint for administrative review, preliminary injunction and declarative relief. Plaintiffs, medical doctors, sought relief from the refusal of the Illinois Department of Registration and Education (hereinafter the Department) to issue plaintiffs temporary certificates of registration required for participation in residency training programs at Illinois hospitals. The issues raised by plaintiffs on appeal may be summarized as follows: (1) whether an administrative agency may apply its new rules retroactively so as to prevent plaintiffs from receiving temporary certificates; (2) whether the Department's rules and procedures were vague and arbitrary so as to violate plaintiffs' substantive due process; (3) whether the hearing held before the special master protected plaintiffs' right to procedural due process; (4) whether the Department's classification of plaintiffs' medical school and the alleged inconsistent application of its rules denied plaintiffs equal protection of the law and denied plaintiffs their privileges and immunities of national citizenship; (5) whether the Department's use of the reports of

a private accreditation association constituted an impermissible delegation of authority; and (6) whether the Department's decision was against the manifest weight of the evidence and was based upon concerns not stated in its rules.

On cross-appeal, defendant raises the issue of whether the circuit court erroneously invoked the doctrine of equitable estoppel to enjoin the Department to issue a temporary certificate of registration to one of the plaintiffs.

Plaintiffs are nine doctors who attended the Universidad Central Del Caribe Escuela de Medicina de Cayey in Puerto Rico (hereinafter Del Caribe). Plaintiffs began their course of studies at Del Caribe in either the fall of 1976, January 1977 or September 1977. Each plaintiff graduated and received the degree of M.D. between June 1980 and December 1981. Each had been accepted into a residency training program at a Chicago area hospital including the residency program of defendant, Mount Sinai Hospital Medical Center of Chicago. The residency appointments commenced in July 1981, with the exception of plaintiff Figueroa Sanchez who had been in Mount Sinai's training program since July 1980. Participation in the residency program was contingent upon plaintiffs' ability to obtain a temporary certificate of registration from defendant, the Illinois Department of Registration and Education (hereinafter the Department).

Plaintiffs began submitting applications for temporary certificates to the Department in April and May of 1981, except for Figueroa Sanchez who first submitted his application in April 1980 but did not complete the application until April 1981. Plaintiffs assert that all but two of the plaintiffs had completed their applications prior to July 1, 1981.

The Medical Practice Act provides that, "Persons holding the degree of Doctor of Medicine *** who wish to pursue programs of graduate *** training in this State, may receive without examination, in the discretion of the Department, a two-year Temporary Certificate of Registration." (Ill. Rev. Stat. 1981, ch. 111, par. 4422.) An applicant is required to fulfill several requirements including that "he is or will be a graduate of a medical school or college reputable and in good standing in the judgment of the Department." (Ill. Rev. Stat. 1981, ch. 111, par. 4422.) Under section 19 the Department is directed to make rules for establishing reasonable minimal standards of educational requirements to be observed by medical colleges and is further directed to determine the reputability and good standing of all schools. Ill. Rev. Stat. 1981, ch. 111, par. 4454.

Pursuant to this statutory mandate the Department promulgated

a regulation which provided:

> "*RULE I*
> Medical colleges having rules and curricula commensurate with and equivalent to the rules and curricula of the College of Medicine of the University of Illinois, will be considered for accreditation by the Department of Registration and Education."

This rule was in effect from September 3, 1973, to July 1, 1981. In the spring of 1980 the Joint Committee of the Legislature recommended that the Department revise Rule I to incorporate standards and criteria by which to evaluate medical schools. There also was concern apparently that Rule I, as it existed, was unconstitutional. Indeed, Rule I was later declared unconstitutional as an impermissible delegation of authority to an outside body. *St. George's University School of Medicine v. Department of Registration & Education* (1982), 102 Ill. App. 3d 1208 (Rule 23 order).

The record indicates that the procedure used to determine acceptability of an applicant's school under Rule I consisted of ascertaining whether that school was listed in a directory of American medical schools called The Directory of Residency Training Programs or, if a foreign school, in the directory of medical schools compiled by the World Health Organization. If the medical school attended by the applicant was listed in these directories, a temporary certificate of registration was issued.

The Directory of Residency Training Programs listed programs accredited by the Liason Committee on Medical Education (hereinafter LCME). LCME was created by the American Medical Association and the Association of American Medical Colleges for the accreditation of United States and Canadian schools. Del Caribe was listed in that directory.

Sometime in early 1980, the supervisor of the medical section of the Department became concerned about the quality of education received in new schools that were being formed in the Caribbean. Her concern was triggered by an article in a professional journal which was critical of these new proprietary schools. About this time she also saw a letter written by the Illinois medical school deans to Governor Thompson which advocated particular vigilance toward the credentials of Caribbean medical school graduates. Also, various newspaper articles dealing with these schools were circulated in the Department. The supervisor testified that she considered three schools to be in that category: St. George's, Domenic and American University of the Caribbean. Sometime in 1980, the supervisor instructed the medical section to hold all applications from graduates of Caribbean schools. Conse-

quently, the clerk who handled applications set aside, and did not process, applications from graduates of Del Caribe.

In the latter part of 1980 the Department discontinued using the World Health Organization book for determining the respectability and good standing of foreign schools. Instead, the Department used a list of foreign schools whose graduates had become licensed physicians in Illinois. Two Puerto Rican schools other than Del Caribe were mistakenly placed on the list of foreign schools.

The Department's attention was first drawn to Del Caribe in April of 1981 when the Department began to receive numerous applications from its graduates. Since a revised version of Rule I was being drafted, the decision was made to hold the plaintiffs' applications and evaluate Del Caribe according to the revised Rule I which would become effective on July 1, 1981. In June 1981, the Department requested the Dean of Del Caribe to forward material on the medical program and obtained material from LCME relative to its evaluation of Del Caribe. There was a delay in obtaining this material since LCME would not release the materials relative to its accreditation study of Del Caribe without permission from the school.

The Medical Examining Committee began its evaluation of Del Caribe in the fall of 1981. The evaluation was conducted under the standards contained in the revised Rule I. The revised rule sets forth in detail the minimum criteria necessary for a recommendation that a medical school is reputable and in good standing. The criteria include the prescribed duration of the program, the subject areas which must be covered in the curriculum, the necessity of a competent and balanced faculty sufficient for the size of enrollment and the maintenance of a clinical program in affiliation with a hospital. The revised Rule I provides that the Medical Examining Committee shall take into consideration but shall not be bound by the accreditation of a number of medical associations including LCME. The rule also contains a "grandfather" clause which provides that the Department has determined that all medical programs accredited by LCME and other medical associations meet the minimum criteria set forth in the rule and are, therefore, approved.

The chairman of the Medical Examining Committee asked a committee member to a review of the material received from Del Caribe and the survey reports prepared by LCME after each visit to the school by the accreditation team. A summary of these materials was submitted to the committee. At its October 14, 1981 meeting, the committee recommended approval of Del Caribe for students who had begun their studies there subsequent to September 1978. On Decem-

ber 18, 1981, after further study of Del Caribe the committee decided to deny approval to graduates of Del Caribe who had begun their studies there before September 1978, during the first two years of Del Caribe's existence. A letter was sent to plaintiffs notifying them that their applications were denied. Until the denial of the certificates plaintiffs were working in residency programs of Chicago hospitals.

The committee noted the following deficiencies in Del Caribe during its first two years of operation: the number of faculty was insufficient for the number of students; the absence of a clinical facility affected the entire program; no pathology course was listed in the curriculum; student records were not centralized nor was there sufficient information to determine the time students spent in laboratories versus the time spent in class; and the curriculum vitae of the faculty was not available.

Plaintiffs filed a complaint in the circuit court of Cook County seeking to compel the Department to issue temporary certificates of registration. The trial court remanded this matter to the Department for an evidentiary hearing. Extensive hearings were held before a special master.

The parties entered into several stipulations before the hearing officer. The Department stipulated that the plaintiffs performed satisfactorily in their various residency programs before the denial of the certificates forced them to leave these programs. The Department also stipulated that the plaintiffs' performances were comparable to the performance of students from approved medical colleges. The Department further stipulated that if plaintiffs' applications had been processed in accordance with the practices and procedures employed by the Department prior to July 1, 1981, temporary licenses would have issued because Del Caribe was listed in the 1980-1981 Directory of Residency Programs accredited by LCME. The special master concluded that the Department's denial of the certificates was not contrary to the manifest weight of the evidence and that plaintiffs were not subject to discrimination by the Department in its administration of Rule I.

The trial court reviewed the findings of the special master and the record of the hearing. The court dismissed the complaint except the portion dealing with plaintiff Dr. Jose M. Figueroa Sanchez' claim of estoppel. The court found that the Department's conduct toward Figueroa Sanchez and the fact that it had informed him by letter that he was to receive a license estopped the Department from now denying Figueroa Sanchez a license.

Although plaintiffs have raised a number of equal protection and

due process claims, their argument has been directed principally to the issue of whether the Department's adoption of a new and more stringent rule and practice without notice to plaintiffs and the denial of temporary certificates to plaintiffs under that rule, despite the fact that plaintiffs' applications were complete before the effective date of the new rule, constituted an abuse of the Department's authority. Plaintiffs rely upon *Gatica v. Department of Public Aid* (1981), 98 Ill. App. 3d 101, 107, 423 N.E.2d 1292, 1296, to argue that an administrative agency may not abruptly deviate from prior rules with respect to the applicability of a fundamental directive without prior notice of its intended change. Plaintiffs assert that this is especially true where, as in the case at bar, plaintiffs' fundamental liberty to practice in the professions is adversely affected by the change in administrative procedures and plaintiffs required certain knowledge of what is required of them by the State. (*Burke v. Department of Registration & Education* (1980), 83 Ill. App. 3d 647, 650, 404 N.E.2d 961, 963; *Briscoe v. Kusper* (7th Cir. 1970), 435 F.2d 1046.) Plaintiffs urge this court to follow the decision in *Burke*. There, the court ordered the Department of Registration and Education to consider the applications of plaintiff nurses under a former interpretation of an agency rule rather than under the current interpretation where it was clear that the nurses had relied upon the old interpretation, that they had no notice of the change in the interpretation, and that they would have been licensed under the former interpretation.

The Department argues that the key inquiry in determining the validity of an administrative activity is whether the action was undertaken in furtherance of the intent of the legislature as set forth in the statutes. The Department argues that the State is legitimately concerned with the qualifications of those practicing in the professions and that the General Assembly determined that graduation from a medical program which is "reputable and in good standing in the judgment of the Department" (Ill. Rev. Stat. 1981, ch. 111, par. 4422) is an absolute prerequisite for receipt of a temporary certificate. The Department argues that the statute expressly commits the determination of a medical program's standing to the Department's judgment and includes a grant of authority to do all that is reasonably necessary to execute that legislative power.

The Department argues that the supreme court, in *Rios v. Jones* (1976), 63 Ill. 2d 488, 348 N.E.2d 825, found a similar allegation of denial of due process in the area of medical licensing to be without merit. The Department contends that under *Rios*, the manner in which the Department applied the revised Rule I is constitutionally

permissible. In *Rios*, foreign doctors who held special licenses to practice medicine challenged the constitutionality of legislation which curtailed the renewal of their limited licenses and imposed additional examination requirements upon it. Previously, foreign doctors who had not obtained a license to practice medicine in all its branches were able to receive a limited license to practice medicine under certain restrictions in State hospitals. The court held that the doctors' property interest in their licenses was not so great as to render unconstitutional legislation reasonably enacted under the State's inherent power to protect public health and welfare. *Rios v. Jones* (1976), 63 Ill. 2d 488, 497, 348 N.E.2d 825, 829.

We find *Rios* to be inapposite to the case at bar. Here, we are not concerned with the constitutionality of legislation. Rather, the issue is whether an administrative agency may change its rules and apply them retroactively to permanently bar plaintiffs from participation in a residency program in the State of Illinois.

The Medical Practice Act (Ill. Rev. Stat. 1981, ch. 111, par. 4454), gives the Department authority to make rules for establishing reasonable minimum standards of educational requirements to be observed by medical colleges. Although an administrative agency may change its rules and practices, it may apply its rules retroactively only in the proper cases. *Cartwright v. Illinois Civil Service Com.* (1980), 80 Ill. App. 3d 787, 400 N.E.2d 581.

■ In determining whether an administrative agency may apply its newly adopted regulations retroactively, this court has outlined several considerations: whether the case is one of first impression, whether the agency action results in injury or substantial prejudice, whether the regulation represents an abrupt departure from well-established practice, the extent to which the party against whom the new regulation is applied relied on the former regulation and, the degree of the burden imposed upon that party. (*Cartwright;* see also *Retail, Wholesale & Department Store Union v. NLRB* (D.C. Cir. 1972), 466 F.2d 380.) In *Cartwright*, an employee of a State correctional center objected to the fact that his discharge hearing was brought before the newly created Inquiry Board, rather than the Employee Review Board, because the regulation creating the Inquiry Board had not yet become effective. There, this court held that the retroactive application of the regulation creating the Inquiry Board was proper. The structure of the Inquiry Board better served the ends of justice than its predecessor, the Employee Review Board, and plaintiff was not substantially prejudiced by the changed regulation since the two boards were similar (80 Ill. App. 3d 787, 792, 400 N.E.2d 581, 585).

In the case at bar, the revised Rule I represents an abrupt departure from the old rule and the practice employed by the Department. Under the former rule and the procedure for implementing it, Department approval of a medical program was foreseeable if that program was listed in the LCME Directory. The revised rule, however, requires in depth study of a medical school by the Medical Examining Committee to determine if the school is reputable and in good standing under the extensive criteria of the rule. Furthermore, the retroactive application of the revised Rule I substantially prejudices plaintiffs who are now prevented from pursuing the residency training programs to which they were accepted.

The United States Supreme Court has stated that in order to decide whether to grant or deny retroactive effect to a newly adopted administrative regulation:

> "[R]etroactivity must be balanced against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles. If that mischief is greater than the ill effect of the retroactive application of a new standard, it is not the type of retroactivity which is condemned by law." (*SEC v. Chenery Corp.* (1947), 332 U.S. 194, 203, 91 L. Ed. 1995, 2003, 167 S. Ct. 1575, 1581.)

A reviewing court may reject an administrative decision when the inequality of a retroactive application of an administrative regulation has not been counterbalanced by sufficiently significant statutory interests. (*Retail, Wholesale & Department Store Union v. NLRB* (D.C. Cir. 1972), 466 F.2d 380, 390.) The inequality of the retroactive application in the present case far exceeds the State's statutory interest. The Department has stipulated that if the applications were processed at the time they were received the plaintiffs would have been granted licenses. The medical program at Del Caribe would have been acceptable. The Department, however, separated plaintiffs' applications from the bulk of applications received and elected to hold these applications until the effective date of the new Rule I. The trial court found that "the practice of issuing these licenses was delayed, and, if you will, dilatory." The inequality of applying Rule I retroactively is further evidenced by the fact that the Rule contains a broad "grandfathering" clause which provides that all schools approved by LCME are acceptable to the Department.

Although "[t]he State's interest in promoting the general welfare by licensing physicians is of great importance" (*Rios v. Jones* (1976), 63 Ill. 2d 488, 497, 348 N.E.2d 825, 830), the fact that the Department issued licenses for several years in the manner revealed in the

record suggests that the stringent requirements for approval of a medical school program established by the revised rule are not essential to protecting the State's interest. Indeed, the record indicates that in 1980 the Department issued a temporary certificate to a graduate of Del Caribe who attended the school during the years the Department later found to be unacceptable. Furthermore, the Department has stipulated that plaintiffs' performance in their residency programs, before the denial of the certificates forced them to leave those programs, was satisfactory and was comparable to the performances of students from approved medical schools. The Department has not made a sufficient showing that the deliberate delay in processing plaintiffs' applications in order to evaluate Del Caribe under the revised rule was essential to protecting the State's interest.

██ ▌ An agency's construction of a statute or rule is considered persuasive, but not binding. (*Howard v. Miller* (1982), 108 Ill. App. 3d 1, 438 N.E.2d 680; *Olin Corp. v. Pollution Control Board* (1977), 54 Ill. App. 3d 480, 370 N.E.2d 3; see also *Bastian v. Personnel Board* (1982), 108 Ill. App. 3d 672.) We find from the record that the retroactive application of Rule I to the plaintiffs was not proper. Therefore, we reverse the Department's determination that Del Caribe was not a medical school reputable and in good standing and hold that licenses should have issued to the seven plaintiffs whose applications were completed before July 1, 1981, in accordance with the Department's stipulations before the special master. With respect to the two plaintiffs who applied after the effective date of the revised Rule I, we find that the good standing of Del Caribe having been determined under the old rule, the "grandfathering" clause of the new rule provides that they too are entitled to receive temporary licenses.

In view of our decision on this issue, we need not consider the remaining issues raised by the parties. Prior to oral argument on this case defendant Mount Sinai Hospital was dismissed by agreement between the parties. Plaintiffs have informed this court by supplemental brief that if granted the relief they seek they are all desirous of returning to Illinois to pursue residency training programs in this State.

Accordingly, the decision of the circuit court of Cook County is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed and remanded.

GOLDBERG and O'CONNOR, JJ., concur.