MARIA ROMERO *et al.*, Plaintiffs-Appellants, v. STEPHEN F. SELCKE, Director of the Department of Professional Regulation, Defendant-Appellee.

First District (2nd Division)   No. 1—90—1097

Opinion filed June 25, 1991.

William J. Larned, of Wilmette, for appellants.

Roland W. Burris, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE COCCIA delivered the opinion of the court:

Plaintiffs Maria Romero, Benchaporn Samiprem and Majida K. Haque, foreign-educated applicants for Illinois nursing licenses, appeal from a trial court order granting summary judgment to defendant, Stephen F. Selcke, Director of the Illinois Department of Professional Regulation (the Department), and denying plaintiffs' motion for summary judgment. Plaintiffs contend that the trial court erred in finding that defendant can require plaintiffs to pass a Council of Graduates of Foreign Nursing Schools (CGFNS) examination as a prerequisite for licensure.

Prior to 1984, Illinois administered the National Council Licensure Examination (NCLEX) to qualified persons. On January 1, 1984, Illinois adopted the requirement that foreign-educated applicants first pass the CGFNS examination prior to taking the National Council Licensure Examination. Ill. Rev. Stat. 1985, ch. 111, par. 3428.1.

The CGFNS tests both knowledge of English and knowledge of nursing. A brochure published by the Philadelphia-based Commission on Graduates of Foreign Nursing Schools is attached to the complaint as an exhibit. The brochure states that the "commission screens credentials and administers a qualifying examination for foreign nurses to take in their own countries before they apply for entry into the United States. It is a screening and testing process to determine if applicants are likely to pass an American state licensing exam. Given in English, the exam measures proficiency both in nursing and in the use of the English language."

The brochure states further that in the years 1979 to 1981, 63% of persons who passed the CGFNS exam went on to pass the licensing exam given in the United States. Another 17% passed the State exam on reexamination. The brochure also recites that "more than half of the state licensing boards now require a CGFNS certificate before they will allow a foreign nurse graduate to take the state li-

censing exam." It states further that the "nursing portion of the exam is prepared, under contract, by the National League for Nursing. Its content, about four hours in length, is designed to make it comparable to the National Council Licensing Examination for Registered Nurses (NCLEX RN). This is the test which is used in all states to qualify nurses for licensure."

Apparently during 1984 and 1985, the Department waived the CGFNS requirement in certain cases. Plaintiffs' attorney filed an affidavit stating that the Department had waived the CGFNS requirements since January 1, 1984, "on numerous occasions" for his clients, 19 of whom he listed in the affidavit.

On April 25, 1985, the Department issued a memorandum waiving the CGFNS examination for all applicants who had taken the National Council Licensure Examination prior to July 1985. The memorandum further announced that after July 1985, all applicants would need CGFNS certification before being allowed to take the National Council Licensure Examination.

Litigation attacking the validity of the requirement announced in the April 25, 1985, memorandum was filed in Simon v. Clayton, No. 86—CH—3444 (*Simon*). On April 27, 1986, a preliminary injunction was entered in *Simon* which enjoined the Department from enforcing CGFNS against anyone during the pendency of the cause.

Plaintiffs, having completed a credential check by the Department of Professional Regulation, were permitted to take the National Council Licensure Examination, without having first taken the CGFNS. All of the plaintiffs passed the NCLEX examination. The Department thereafter granted plaintiffs the authority to work as registered nurses under certain conditions, without taking the CGFNS, pursuant to the *Simon* preliminary injunction.

Plaintiffs' applications for licensure are still pending. A letter of authority dated June 24, 1986, and sent to a nurse who petitioned to intervene in the present suit reads as follows:

"Please accept this letter as full authority for [the holder] to practice nursing in accordance with the Illinois Nursing Act, subject to the conditions set forth below.

On April 25, 1986, the Department of Registration and Education was preliminarily enjoined by the Circuit Court of Cook County in *Simon, et al. v. Clayton* *** from requiring successful completion of the *** CGFNS[ ] examination. The above-named person has satisfied all requirements for the practice of nursing except completion of the CGFNS examination.

[The holder] therefore has authority to practice nursing unless and until the Department receives further order of court."

On January 1, 1988, the new Illinois Nursing Act of 1987 (Act) became effective. (Ill. Rev. Stat. 1987, ch. 111, par. 3501 *et seq.*) Under the new Act, applicants could either qualify under CGFNS or, as an alternative, could pass an examination which tests competency in the English language. The Illinois Nursing Act of 1987 provides that the Department shall issue a license to qualified persons if that person has met certain requirements and:

"An applicant who received her or his nursing education in a country other than the United States or its territories shall be required to submit to the Department certification of successful completion of the Commission of Graduates of Foreign Nursing Schools (CGFNS) Examination. An applicant who is unable to provide appropriate documentation to satisfy CGFNS of her or his educational qualifications for the CGFNS examination shall be required to pass an examination to test competency in the English language which shall be prescribed by the Department, if determined by the Committee to be educationally prepared in nursing." Ill. Rev. Stat. 1987, ch. 111, par. 3512 (eff. Jan. 1, 1988).

As a result of the passage of this Act, on June 7, 1988, the Simon v. Clayton case was dismissed based on mootness. The injunction which had been in effect from April 27, 1986, until June 7, 1988, was dissolved.

On May 27, 1988, the Department wrote to plaintiff Haque that it expected her to pass the screening requirements of the CGFNS by October 15, 1989. The other two plaintiffs received no similar notice.

On April 20, 1989, plaintiffs wrote to the Department requesting action on their pending applications for licensure without requiring them to take the CGFNS. On May 15, 1989, the Department replied that it had no authority to waive the statutory requirements.

On June 14, 1989, plaintiffs filed the present action. On September 28, 1989, the court denied defendant's motion to dismiss. On October 12, 1989, the court entered an injunction which enjoined the Department from interfering with plaintiffs' right to work as registered nurses in Illinois until further court order.

In February 1990, individuals in similar circumstances filed petitions to intervene. On February 22, 1990, the parties entered an

agreed order which withdrew the petitions to intervene, but were permitted to receive the same protective relief under the October 12, 1989, injunction that plaintiffs received. The agreed order describes the "persons in similar circumstances as the named plaintiffs' as persons "who have satisfied all the requirements for the practice of professional nursing except completion of the CGFNS examination" and provided that they would "be allowed to continue to practice nursing under letters of authorization previously issued by defendant, and will be included in the injunction issued by this court on October 12, 1989, said agreement to be confirmed by letter from the defendant as to each person who seeks to be so included." The order further states that "the [October 12, 1989,] injunctive relief described above shall apply to the four named intervenors and to all similarly situated persons as described above who request of the defendant to be included under the injunction."

On February 2, 1990, defendant filed a motion for summary judgment. On February 5, 1990, plaintiffs filed a motion for summary judgment.

On March 30, 1990, the court granted defendant's motion for summary judgment; denied plaintiffs' motion for summary judgment; and found plaintiffs must take the CGFNS examination for their Illinois nursing licenses. The court ordered that the October 12, 1989, injunction remain in effect during the pendency of any appeal.

■■ Plaintiffs contend that the court erred in finding they were subject to the CGFNS requirements. Summary judgment should be granted where the pleadings, depositions, affidavits and admissions on file show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Purtill v. Hess* (1986), 111 Ill. 2d 229, 489 N.E.2d 867.

Plaintiffs challenge that in requiring them to take the CGFNS as a prerequisite for licensure, the Department has applied the law in a manner that deprives them of their due process rights.

We must start our inquiry by examining whether the statute's regulation of plaintiffs' right to pursue a profession violates the due process clauses of the United States and Illinois constitutions.

■■ ■ In determining the propriety of this statute, we apply a rational basis test. (*Potts v. Illinois Department of Registration & Education* (1989), 128 Ill. 2d 322, 538 N.E.2d 1140, citing *Pozner v. Mauck* (1978), 73 Ill. 2d 250, 383 N.E.2d 203; *Rios v. Jones* (1976), 63 Ill. 2d 488, 348 N.E.2d 825; *Wineblad v. Department of Regis-*

*tration & Education* (1987), 161 Ill. App. 3d 827, 515 N.E.2d 705.) Under that test, a statute will be upheld if it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor discriminatory. *Boynton v. Kusper* (1986), 112 Ill. 2d 356, 494 N.E.2d 135.

Plaintiffs bear a heavy burden in establishing that the statute violates their due process rights. A statute is presumed to be valid, and the party challenging its validity bears a substantial burden in proving that it is irrational. *Potts v. Illinois Department of Registration & Education* (1989), 128 Ill. 2d 322, 538 N.E.2d 1140.

■■ ■ The State has a legitimate interest in regulating the licensure of nursing professionals. The purpose of licensures of professions is to prevent injury to the public by assuring that the occupation is practiced with honesty and by excluding from the profession those who are incompetent. (*Alexander v. Director, Department of Agriculture* (1983), 111 Ill. App. 3d 927, 444 N.E.2d 811; *Ranquist v. Stackler* (1977), 55 Ill. App. 3d 545, 370 N.E.2d 1198.) Examinations assure that such skills needed for competency are in fact held by the applicant. (*Thompson v. Schmidt* (7th Cir. 1979), 601 F.2d 305.) Section 4 of the Illinois Nursing Act provides that the purpose of licensure is "[f]or the protection of life and the promotion of health, and the prevention of illness and communicable diseases," and to ensure that any nurse practicing in Illinois "is qualified to practice." Ill. Rev. Stat. 1989, ch. 111, par. 3504.

■■ The CGFNS examination tests proficiency in the English language and nursing knowledge. This bears a reasonable relationship to the legitimate interests of the State in securing the public health, safety and welfare as it relates to persons practicing nursing in this State.

Plaintiffs point out, however, that it is irrational to require them to pass the CGFNS, a test normally taken *prior* to taking the NCLEX, when they have already passed the NCLEX. The CGFNS is a screening process to determine whether the applicants are likely to pass the American State licensing exam (the NCLEX). Since plaintiffs have already passed the NCLEX, they argue that the unfairness in having them take what is normally a preliminary examination rises to the level of a constitutional violation of procedural due process.

The trial court gave considerable attention to this argument, but concluded that, while the requirement's logic might seem "somewhat unfair," any unfairness to plaintiffs did not rise to the

level of not being rationally related to the ends that the requirement seeks to achieve. We agree.

In *Rios v. Jones* (1976), 63 Ill. 2d 488, 348 N.E.2d 825, the court upheld a statutory amendment requiring the successful passage of an examination by the plaintiffs, who were foreign-educated holders of Illinois permits to practice medicine. The court found no violation of the due process rights of plaintiffs. The court held that the State had a compelling interest in establishing standards of licensing practitioners and regulating the practice of their professions, and that the plaintiffs' interest in continued employment must yield to the State's legitimate exercise of power to protect the public health, safety and welfare. "We believe that it is reasonable to impose strict licensing requirements upon physicians who received their medical training in foreign countries." *Rios*, 63 Ill. 2d at 497, 348 N.E.2d at 825.

In *Wineblad v. Department of Registration & Education*, the court upheld a statute requiring physician's assistants who were *already licensed* to take an additional certifying examination as a condition of retaining their licenses. The exam tested core skills minimally required by all physician's assistants. The fact that plaintiffs were already licensed and practicing physician's assistants did not affect the court's holding that the State could require plaintiffs to be tested on these minimally required core skills.

The court in *Wineblad* found no retroactive application of this requirement. It held that, while plaintiffs were not required to pass the test when they were *first* licensed, the "legislature's requirement that all physician's assistants [now] achieve national certification is reasonably related to the State's licensing scheme and is a valid exercise of the State's power to regulate health care professionals in order to protect the public health, safety and welfare." (*Wineblad*, 161 Ill. App. 3d at 831, 515 N.E.2d at 708.) The court also noted that, in licensing professionals, the decision to apply additional requirements—even retroactively—satisfies due process if it is justified by a rational legislative purpose. *Wineblad*, 161 Ill. App. 3d at 832, 515 N.E.2d at 709, citing *Brown v. McGarr* (7th Cir. 1985), 774 F.2d 777.

In *Brown v. McGarr*, a lawyer challenged new United States District Court rules which required, for admission to a newly created trial bar, that a certain level of experience be attained prior to admission. Plaintiff complained that this new requirement should not apply to lawyers who had previously been admitted to practice before the court. The court in *Brown* found the experience require-

ment prior to admission to the trial bar did not violate due process because it was justified by a rational legislative purpose, that of maintaining a high standard of advocacy in the Federal courts. The experience requirement was reasonably related to the practice of law and attainable by reasonable study or application. *Brown v. McGarr*, 774 F.2d at 784.

The demands of due process are proportional to the weight of the interest being protected, and the court must balance that interest against the countervailing interests of society. If a balancing of these interests reveals that the State's exercise of its power is reasonable, the legislation must be upheld. *Potts v. Illinois Department of Registration & Education*, 128 Ill. 2d at 332-33, citing *Rios v. Jones*, 63 Ill. 2d at 497, 538 N.E.2d at 1140.

In balancing plaintiffs' interest in practicing nursing without taking the additional examination against the State's interests in protecting the public from unqualified nursing practitioners, the trial court properly found that plaintiffs' interests are not sufficient to render the Department's application of the statute unconstitutional. Our supreme court's reasoning in *Potts* is equally applicable here:

> "The State has a substantial interest in promoting the general welfare by licensing physicians. (*Rios v. Jones* (1976), 63 Ill. 2d 488, 497.) The legislature is presumed to have investigated the question and ascertained what is best for the good of the profession and the good of the people among whom it is practiced. (*People v. Love* (1921), 298 Ill. 304, 312.) The question of whether the course chosen by the legislature to achieve a desired result is either wise or the best means available is not a proper subject of judicial inquiry. (*Garcia v. Tully* (1978), 72 Ill. 2d 1, 10.) It is for the legislature, not the courts, to balance the advantages and disadvantages of the requirements. *Williamson v. Lee Optical of Oklahoma, Inc.* (1955), 348 U.S. 483, 487, 99 L. Ed. 2d 563, 571, 75 S. Ct. 461, 464." *Potts v. Illinois Department of Registration & Education*, 128 Ill. 2d at 333.

In the present case, we decline to sit in judgment on the question of whether a single test, or two tests, more adequately test either basic English proficiency or knowledge of nursing. It would be a difficult, if not an impossible, task for this court to take on the burden, on this record, of reviewing the extensive details required in examining generally the qualifications of foreign-educated applicants for Illinois nursing licenses; of the benefits of taking the

CGFNS; of whether the NCLEX tests precisely the same things covered in the CGFNS; and of the risks which the public being cared for by these nursing applicants might encounter were they not adequately tested. The burden of analyzing the substantive information being tested in these two examinations must rest with a legislative body. Perhaps the Department could in fact institute a wiser or better means of guaranteeing that these plaintiffs are qualified to receive a license, which carries greater benefits than the letter of authorization they now hold. The scope of our due process inquiry, however, simply does not extend that far.

Under the holdings of *Rios* and *Wineblad,* and the constitutional principles of statutory construction discussed above, we hold that the trial court properly found that plaintiffs' due process rights were not violated by requiring them to pass the CGFNS examination.

Plaintiffs also maintain that the Department retroactively applied the statute which became effective January 1, 1988, to require persons who applied under the statute which was in effect from January 1, 1984, to 1988 to undergo CGFNS certification.

The retroactivity argument is misplaced. The requirement the Department seeks to impose on plaintiffs was in effect as of January 1, 1984. Applicants such as plaintiffs were required to take the CGFNS under the old statute. They simply received a temporary reprieve or benefit while the *Simon* preliminary injunction was in effect. Once that injunction was dissolved, the temporary benefit ended. The CGFNS requirement was in effect under both statutes and no retroactive application is involved here. See *United States Steel Credit Union v. Knight* (1965), 32 Ill. 2d 138, 204 N.E.2d 4 (defining retroactive law as one that takes away or impairs vested rights, creates a new duty, or attaches a disability in respect of transaction already past).

Plaintiffs rely on *Gonzalez-Bianco v. Clayton* (1982), 110 Ill. App. 3d 197, 441 N.E.2d 1308, where the court held that the Department could not apply retroactive effect to a newly adopted administrative regulation which used new criteria, where the Department had set aside applications for temporary certificates of registration for residency in Illinois hospital programs until the adoption of the new criteria.

In that case, however, the denial of applications was an abrupt departure from the preexisting rule. Here, the CGFNS requirement is not new. Moreover, the defendant here did not set plaintiffs' applications aside while waiting for a new law to take effect. In *Gon-*

*zales-Blanco*, the Department stipulated that the licenses would have been granted if the applications had not been set aside. In the present case, the Department had no power to enforce already existing statutory requirements because of the temporary injunction in *Simon*. Thus, the Department was forced to merely issue temporary letters of authority pending resolution of *Simon*. Unlike in *Gonzalez-Blanco*, here it was the *Simon* temporary order, not the Department's voluntary acts, which temporarily delayed the Department's enforcement of the statute. See *Wineblad*, 161 Ill. App. 3d at 831 (distinguishing *Gonzalez-Blanco*, 110 Ill. App. 3d 197, 441 N.E.2d 1308).

■ Plaintiffs also point out that two of the plaintiffs received no notice of the Department's deadlines to pass the CGFNS. While that is not dispositive on appeal, the trial court is correct that the Department must make every effort to provide the opportunity to take the CGFNS and should include notification to all applicants affected by these proceedings of their rights and obligations. We agree with the trial court that everybody affected should have an opportunity to take the examination.

■ Because our decision here will affect many foreign-educated nurses who are presently practicing in Illinois under only a letter of authorization, we remand the case to the trial court for entry of an appropriate order concerning notification and deadlines for taking the exam. The trial court should continue to enforce the stay which prevents the Department from enforcing the requirement until the order stating notice and examination deadline requirements is negotiated and approved.

Finally, while we find no due process violation here, we sympathize with the plight of this particular group of nurses who have passed the NCLEX and have been practicing nursing in Illinois for several years. We believe that further remedy, if any, lies in a request by plaintiffs to the legislature for the passage of a bill which would "grandfather" in this group of foreign-educated nurses who practiced under a letter of authorization while the *Simon* litigation was pending.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed, and the cause is remanded with directions.

Judgment affirmed; cause remanded with directions.

SCARIANO, P.J., and DiVITO, J., concur.