MARYANN T. VALDEZ, Plaintiff-Appellee, v. NIKKI M. ZOLLAR, Director of Professional Regulation, *et al.*, Defendants-Appellants.—NIDA GAFFUD, Plaintiff-Appellee, v. NIKKI M. ZOLLAR, Director of Professional Regulation, *et al.*, Defendants-Appellants.

First District (5th Division)   Nos. 1—94—2461, 1—94—2626 cons.

Opinion filed May 10, 1996.

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General and William K. Blanchard, Assistant Attorney General, of counsel), for appellants.

William J. Larned and James F. Carlson, both of Wilmette, for appellees.

JUSTICE COUSINS delivered the opinion of the court:

The plaintiffs in these consolidated appeals, Maryann Valdez and Nida Gaffud, both filed complaints against the defendants, Nikki Zollar and the Department of Professional Regulation, seeking administrative review of the defendants' denial of the plaintiffs' licensure to practice nursing. Both plaintiffs had gained licensure in other states by passing the National Counsel Licensure Examination (NCLEX) in

1993 after failing earlier attempts in the 1980s. When plaintiffs sought Illinois licensure by endorsement, defendants denied licensure based on a January 1, 1990, amendment to the Illinois Nursing Act of 1987 (the Nursing Act) (see 225 ILCS 65/15 (West 1992)), which provided that candidates must pass NCLEX within three years of the first NCLEX exam they attempted. In the trial courts, both plaintiffs were successful and granted licensure because both courts held that the 1990 amendment should apply only prospectively. Defendants have appealed both decisions, and we have consolidated the two appeals.

We affirm.

BACKGROUND

■ The NCLEX is a nationwide exam given twice yearly in February and July. Gaffud initially attempted to pass the NCLEX in July of 1983, and Valdez initially tried in July 1987. At the time of both exams, the following statute was in force:

"Any person in this State or in any other State or territory of the United States who shall fail any examination *a total of 6 times* to determine the fitness of such person to receive a license as a registered professional nurse, shall thereafter be ineligible to take any further examination or examinations until such time *** of the recompletion of the entire course of study ***." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 111, par. 3428.2.

Both plaintiffs failed their initial examination attempts. Gaffud also failed the NCLEX exam in February 1984, July 1984, and July 1985. Gaffud then postponed any additional attempts for six years as she suffered five miscarriages from six pregnancies.

In 1987, the Nursing Act was amended as follows:

"[A]ny person in this State or in any other jurisdiction of the United States who fails any examination a *total of 6 times within 3 years* to determine the fitness of such person to receive a license as a registered professional nurse *** shall thereafter be ineligible to take any further examination or examinations, or be issued a license, until such time *** of the recompletion of the entire course of study ***." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 111, par. 3515 (eff. January 1, 1988).

Valdez made another attempt to pass NCLEX in February 1988, but she failed again.

In 1989, the Nursing Act was again amended:

"[A]ny person in this State or in any other jurisdiction of the United States who fails to pass an examination *within 3 years* to determine the fitness of such person to receive a license as a registered professional nurse *** shall thereafter be ineligible to

take any further examination or examinations, or be issued a license, until such time *** of the recompletion of the entire course of study ***." (Emphasis in original.) Ill. Rev. Stat. 1989, ch. 111, par. 3515 (eff. January 1, 1990).

Valdez failed additional NCLEX attempts in February 1990, July 1990, February 1991, February 1992, and July 1992; Gaffud failed another attempt in July 1991. However, in February 1993, both Gaffud and Valdez passed the NCLEX on their sixth and eighth attempts, respectively. Valdez obtained nursing licensure in Minnesota, and Gaffud obtained licensure in Wisconsin. Both states have admission rules identical to the Illinois Nursing Act but for the three-year time limitation imposed by the 1990 amendment.

After obtaining their licensure in other states, both plaintiffs applied in 1993 for Illinois licensure by endorsement pursuant to section 19 of the Nursing Act. 225 ILCS 65/19 (West 1992). Section 19(a)(1) allows endorsement "whenever the requirements of such state, or territory of the United States were at the date of license substantially equal to the requirements then in force in this State." 225 ILCS 65/19(a)(1) (West 1992). In November 1993, defendants denied licensure to both plaintiffs by citing Illinois' three-year limit on passing the NCLEX, concluding that Minnesota's and Wisconsin's requirements had not been substantially equal to those of Illinois.

In December 1993, both plaintiffs filed their complaints for administrative review of the defendants' decision, arguing that retroactive enforcement of the 1990 amendment was prohibited. In July 1994, both trial courts reversed the defendants' decision and ordered the defendants to grant licensure, holding that the defendants had improperly applied the 1990 amendment retroactively. In July 1994, defendants appealed both orders, and this court has consolidated the appeals. The defendants make three arguments: (1) they did not retroactively apply the 1990 amendment because the plaintiffs had no vested rights in their lost exam attempts or had insufficient rights to overcome the State's vital interests; (2) they did not apply the 1990 amendment retroactively because the amendment merely clarified the law and was not a substantive change; and (3) plaintiff Valdez should not have been licensed even under the pre-1988 statute because of her seven failures before passing.

OPINION

I

■ In determining whether a statute has been applied retroactively, it is well settled that a statute is not retroactive just because it relates to antecedent events, or because it draws upon antecedent

facts for its operation. *First of America Trust Co. v. Armstead*, 171 Ill. 2d 282, 289-90 (1996). Instead, a retroactive change in the law is one that takes away or impairs vested rights under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect of transactions or considerations already past. *Armstead*, 171 Ill. 2d at 290. Such a retroactive change is prohibited as a violation of the due process clause of the Illinois Constitution, and the legislature is without authority to enact such a law even if that is its express intention. *Armstead*, 171 Ill. 2d at 290.

■ We hold that the 1990 amendment could not preclude additional NCLEX attempts under its three-year time limit before March 1993 because such a change would have created a new obligation and imposed a new duty with respect to the past consideration of previous exams. Whether a particular expectation rises to the level of a vested right is not capable of precise definition, but it should be a complete and unconditional demand or exemption that may be equated with a property interest. *Armstead*, 171 Ill. 2d at 290-91. For a particular expectation to be strong enough to render it complete and unconditional, we believe that a major factor must be the reasonable reliance that the expectation induces. See *Gonzales-Blanco v. Clayton*, 110 Ill. App. 3d 197, 204, 441 N.E.2d 1308 (1982); *Burke v. Department of Registration & Education*, 83 Ill. App. 3d 647, 650, 404 N.E.2d 961 (1980). In this matter, the plaintiffs detrimentally relied on the statute as it existed before 1990. They lost the opportunity to attempt additional exams before their three-year time limit expired. We find that the lack of any time restrictions for passing the NCLEX before 1990 was an unconditional exemption that rose to the level of a vested right.

Our conclusion is supported by other cases that have examined amendments to the licensing requirements of medical providers, as these cases have also focussed on whether their amendments violated reasonable preexisting expectations that individuals had relied upon. In both *Gonzales-Blanco* and *Burke*, we reversed an agency's retroactive application of new rules when they surprised and prejudiced those seeking licenses as medical providers. The *Gonzales-Blanco* court stated:

> "In determining whether an administrative agency may apply its newly adopted regulations retroactively, this court has outlined several considerations: *** whether the agency action results in injury or substantial prejudice, whether the regulation represents an abrupt departure from well-established practice, the extent to which the party *** relied on the former regulation, and the

degree of the burden imposed upon that party." *Gonzales-Blanco*, 110 Ill. App. 3d at 204.

In *Gonzales-Blanco*, we allowed plaintiffs the certificates needed for hospital residency programs because the agency's abrupt departure from its former certificate requirements had substantially prejudiced the plaintiffs. *Gonzales-Blanco*, 110 Ill. App. 3d at 205. We reached a similar conclusion in *Burke*, stating, "We conclude the plaintiffs' constitutionally protected interest in pursuing their chosen profession of nursing demands that *** notice be given of a change in an interpretation of a rule which will substantially affect applicants for licensure before that new interpretation is binding." *Burke*, 83 Ill. App. 3d at 650.

In contrast to *Burke* and *Gonzales-Blanco*, the cases that have allowed changes in medical licensing requirements have specifically stated that the plaintiffs did not reasonably rely on the previous rules. In *Wineblad v. Department of Registration & Education*, 161 Ill. App. 3d 827, 515 N.E.2d 705 (1987), the medical regulations at issue were amended in 1977—one year after they came into existence in 1976—and we stated, "Accordingly, no substantial prejudice to plaintiffs is present as there was no well-established practice of not requiring a certifying examination." *Wineblad*, 161 Ill. App. 3d at 831. In addition, those affected in *Wineblad* were told in February of 1982 that they had to take the qualifying examination by March of 1984, giving them seven years to adapt to the new regulation and over two years of explicit knowledge of its coming enforcement. Thus, we concluded, "Plaintiffs were on notice of the amended statutory provision and any reliance on the former statute was misplaced." *Wineblad*, 161 Ill. App. 3d at 831. In *Yu v. Clayton*, 147 Ill. App. 3d 350, 497 N.E.2d 1278 (1986), the plaintiffs sought the continuance of partial credit from the NTPE nursing test—the precursor to the NCLEX—even though the new NCLEX test was passed or failed in its entirety. We denied the request, stating, "Plaintiff has not indicated how the prior law could have induced her to change her position in reasonable reliance." *Yu*, 147 Ill. App. 3d at 359. In addition, we held that retaining partial credit from the NTPE was no longer practicable as the new testing procedure had dissipated the essence of plaintiff's property interest. *Yu*, 147 Ill. App. 3d at 358. Lastly, the supreme court in *Rios v. Jones*, 63 Ill. 2d 488, 348 N.E.2d 825 (1976), upheld its changes in medical licensing requirements, but stated:

"We note that holders of State hospital permits did not face immediate termination of employment. Public Acts 77—2757 and 78—1103 each provided that the doctors could retain their State

hospital permits for a period of time while they prepared to take an examination for the issuance of licenses to practice medicine in all its branches. Accordingly, we hold that section 13a of the Medical Practice Act is not violative of due process *as it now stands.*" (Emphasis added.) *Rios,* 63 Ill. 2d at 498.

The doctors in *Rios* were given at least two years to take the newly required examination, depending on when their license needed renewal. *Rios,* 63 Ill. 2d at 493. *Rios* and *Wineblad* both allowed regulatory changes only because they provided those affected with sufficient time to adapt, and thus those cases support the decisions of the trial courts in the instant matter.

Plaintiffs contend that their rights under the old exam rules could never be relinquished, so that the General Assembly could never impose on them a time limit for passing NCLEX. However, there is no vested right in the mere continuance of a law, and the legislature has an ongoing right to amend a statute. *Armstead,* 171 Ill. 2d at 291. It is the prejudice from their reasonable reliance on the pre-1990 statute that grants the plaintiffs their rights in this matter. We believe that three years are an ample amount of time for pre-1990 applicants to have discovered and adjusted to the 1990 amendment, allowing them as many additional exam opportunities as they had before the amendment's adoption. See *Wineblad,* 161 Ill. App. 3d at 831 (reliance on former statute was misplaced when plaintiffs had seven years of notice as to the amended provision); *Yu,* 147 Ill. App. 3d at 358-59 (where nurse applicant suffered no prejudice from reliance on past rules, agency was allowed to subject applicant to same requirements as newer applicants). Moreover, pre-1990 applicants could not reasonably believe that they were in a *better* position than people who initially attempted NCLEX in February 1990. Thus, we select March 1993 as when the three-year limit could first be enforced to bar pre-1990 NCLEX applicants from future NCLEX attempts, because March 1993 is when the 1990 amendment would first begin to bar others who had initially attempted NCLEX after the amendment's effective date—those who initially tried NCLEX in February 1990. Because the plaintiffs passed NCLEX before March 1993, the defendants had no authority to deny plaintiffs their nursing licenses based on the three-year limit.

The defendants claim that their interpretation and enforcement of the 1990 amendment are entitled to deference because they direct the agency in charge of implementing the statute. The interpretation of an ambiguous statute by an agency charged with its administration is generally entitled to deference. *Boaden v. Department of Law Enforcement,* 171 Ill. 2d 230, 239 (1996). However, *Armstead* held

that there was no need to determine legislative intent when considering retroactivity because the controlling question was whether the statute impacted on vested rights. See *Armstead*, 171 Ill. 2d at 290. Because statutory interpretation has no bearing on the determination of vested rights, we do not grant the administrative agency any deference in this matter. *Armstead* gave no deference to the administrative agency involved in its case, and we will do likewise.

Moreover, deference to administrative expertise will not serve to license a governmental agency to expand the operation of a statute. *Boaden*, 171 Ill. 2d at 239. *Armstead* held that the prohibition against retroactive laws was a limitation on the powers of the legislature. An administrative agency cannot expand the operation of a statute beyond the limits placed on the powers of the legislature, and we conclude for this additional reason that an agency's determination of its retroactive powers is not entitled to deference by this court.

The defendants next claim that the health and safety of Illinois residents are sufficiently crucial state interests to overcome whatever rights the plaintiffs may have. Although our focus must remain on whether the statute impairs a vested right, a sufficiently weighty state interest would lessen the reasonableness of any individual expectations and the reliance thereby induced, thus rendering the expectation insufficient to form a vested right. See *Gonzales-Blanco*, 110 Ill. App. 3d at 205 (inequality of retroactive application may be counterbalanced by sufficiently significant statutory interests); *Rios*, 63 Ill. 2d at 497 ("[t]he demands of due process are proportional to the weight of the interest being protected in balancing that interest against the countervailing interests of society"). Although the State's interest in licensing medical providers is of great importance, the fact that defendants issued licenses for several years under the previous system suggests that the revised requirements are not essential to protecting the State's interest. *Gonzales-Blanco*, 110 Ill. App. 3d at 205-06. *Rios* and *Wineblad* also specifically approved and required the delayed implementation of the State's higher standards in their cases. Moreover, in this particular instance, where the plaintiffs are already licensed in other states, this court has been less ready to accept arguments that severe actions are necessary to ensure the quality of medical care in this state. See *Arceo v. Selcke*, 226 Ill. App. 3d 166, 171, 589 N.E.2d 675 (1992).

Defendants next argue that the statute need only bear a rational interest to a legitimate state interest to survive scrutiny, and they cite *Wineblad* for this proposition. See *Wineblad*, 161 Ill. App. 3d at 830. However, *Wineblad* made this statement only as to the power of the State to change requirements, and that court specifically held the

State to a higher standard for retroactive application of such requirements. *Wineblad*, 161 Ill. App. 3d at 831. The supreme court in *Rios* required a balancing of competing interests in assessing retroactive application, and *Wineblad* is not in conflict with that doctrine and cannot support the defendants' contention.

The defendants conclude their argument by stating that the requirements in Wisconsin and Minnesota were not substantially equal to the licensing requirements in force in Illinois, claiming that the State's significant interests are harmed "because a lesser standard is being utilized for nurses seeking licensure by endorsement." However, the plaintiffs' status as seeking licensure by endorsement was not relied upon by the trial courts, nor do we rely on it here. Application of the three-year limit as to *anyone*, including Illinois residents, before March 1993 would be a prohibited retroactive application of the statute. We hold that application of the three-year time limit in the 1990 amendment was not possible until March of 1993, when the amendment would no longer unfairly prejudice the rights of those it affected. Because the three-year limit was not in force in Illinois when the plaintiffs passed their examinations, the requirements for licensure in Minnesota and Wisconsin were identical to those in Illinois, and the plaintiffs are entitled to their nursing licenses by endorsement.

II

■ The defendants also argue that they did not apply the 1990 amendment retroactively because the amendment merely clarified existing law and did not substantively change the statute. Where an amendment is procedural in nature, no vested rights are involved and the amendment can be applied without any retroactive impact. *Armstead*, 171 Ill. 2d at 290. The defendants claim that the three-year limit had already been imposed by the 1988 amendment because the 1988 phrase—"who fails any examination a total of 6 times within 3 years"—is identical to the 1990 phrase—"who fails to pass an examination *within 3 years*"—except for the surplusage eliminated by the 1990 amendment. Ill. Rev. Stat. 1987, ch. 111, par. 3515; Ill. Rev. Stat. 1989, ch. 111, par. 3515. Where the language of an enactment is clear and unambiguous, a court is not at liberty to depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189, 561 N.E.2d 656 (1990). Statutes should be construed, if possible, so that no term is rendered superfluous or meaningless. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 634 N.E.2d 712 (1994). Where the

legislature has made a material change in a statute, the presumption is that the amendment was intended to change the law. *Board of Trustees of Southern Illinois University v. Department of Human Rights*, 159 Ill. 2d 206, 213, 636 N.E.2d 528 (1994).

■ We disagree with the defendants' contention that "a total of 6 times within 3 years" should apply identically as the phrase "within 3 years." The defendants' construction is in conflict with each of the three previously outlined canons of statutory interpretation. The defendants claim that the 1988 statute is absurd, and could never apply as written, because "it would be impossible to take the exam more than six times in three years." However, the 1988 statute does apply an exam limit as written because it is possible to take the exam six times within three years, and future exams would be barred after those six attempts. Lastly, in their reply brief, the defendants admit that they did not impose a three-year time limit prior to the 1990 amendment. We find meritless the defendants' contention that the 1990 amendment was merely a procedural change in the statute.

### III

■ Lastly, the defendants claim that Valdez should be denied licensure because she needed eight attempts to pass the NCLEX, violating the six-attempt limit that was in force before being relaxed by the 1988 amendment. However, the defendants did not deny licensure on this ground, nor did they make this argument in the trial court in their responses or post-trial motions. Their only mention of this issue in the trial court was this indirect reference during a hearing: "The statute since back in 1987 has consistently had a provision limiting the number of times you could take this licensing exam, and it still does." However, even this statement is inaccurate as we have concluded that from 1988 until 1990, the statute placed no limits on examination attempts if they were spaced so that six were not taken in a three-year period. As a general rule, any issue not raised at the trial level is waived (*Wagner v. City of Chicago*, 166 Ill. 2d 144, 651 N.E.2d 1120 (1995)), and, thus, the defendants have waived the contention that Valdez violated the pre-1988 statute. See also *Cetnar v. Bernardi*, 145 Ill. App. 3d 511, 515, 495 N.E.2d 1128 (1986) (agency reversed in circuit court was precluded from requesting alternate relief on appeal).

For the foregoing reasons, the judgments of the trial courts are affirmed.

Affirmed.

McNULTY, P.J., and HOURIHANE, J., concur.